UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X

RAYMOND ROSAS,

               Plaintiff,

-against-

BALTER SALES CO. INC., ARNOLD BALTER, individually, MARK BALTER, individually, and BARRY ROSENBERG, individually,

               Defendants.
---------------------------------------------------------------X

Index No.: 12-cv-6557

AMENDED COMPLAINT

Plaintiff Demands a Trial By Jury



Plaintiff, RAYMOND ROSAS, by his attorneys, the Arcé Law Group, P.C., upon information and belief, complains of defendants as follows:

## NATURE OF THE CASE

1. Plaintiff complains pursuant to 42 U.S.C. Section 1981 and to remedy violations of the laws of the State of New York and the Administrative Code of the City of New York, based upon the supplemental jurisdiction of this Court pursuant to Gibb, 38 U.S. 715 (1966) and 28 U.S.C. §1367, seeking damages to redress the injuries Plaintiff has suffered as a result of being harassed and discriminated against by his former employer on the basis of his race, sex/gender together with sexual harassment, assault and battery, and retaliation for having opposed Defendants' unlawful employment actions.

## JURISDICTION AND VENUE

2. The Court has jurisdiction pursuant to 42 U.S.C. §12101 et. Seq.; 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and supplemental jurisdiction thereto.

3. This action involves a Question of Federal Law.

4. Venue is proper in this district based upon the fact that a substantial part of the events or omissions giving rise to the claim occurred within the Southern District of the State of New York. 28 U.S.C. §1391(b).

## PARTIES

5. Plaintiff is a Hispanic male resident of the State of New York, County of Westchester.

6. At all times material, Defendant BALTER SALES CO. INC (herein also referred to as "BSC") was and is a domestic business corporation, duly existing under the laws of the State of New York.

7. At all times material, Defendant ARNOLD BALTER (herein also referred to as "ARNOLD") was and is an employee of Defendant BSC.

8. At all times material, Defendant ARNOLD was and is the Chief Executive Officer ("CEO") of Defendant BSC.

9. At all times material, Defendant MARK BALTER (herein also referred to as "MARK") was and is an owner of Defendant BSC.

10. At all times material, Defendant MARK was and is an employee of Defendant BSC.

11. At all times material, Defendant MARK was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

12. At all times material, Defendant BARRY ROSENBERG (herein also referred to as "BARRY) was and is an employee of Defendant BSC.

13. At all times material, Defendant BARRY was Plaintiff's supervisor and/or had supervisory authority over Plaintiff.

14. Defendant BSC, Defendant ARNOLD, Defendant MARK, and Defendant BARRY are also herein collectively referred to as "Defendants."

15. At all times material, Plaintiff was an employee for Defendants.

## MATERIAL FACTS

16. In or around October 2010, Plaintiff began working for Defendants as a "Driver."

17. At all times material, Defendants employed approximately seven or eight other "Drivers."

## SEXUAL HARASSMENT / GENDER DISCRIMINATION

18. Shortly after Plaintiff began working for Defendants, Defendant BARRY would, almost on a weekly basis, draw a picture of a penis on the back of Plaintiff's pay check.

19. Shortly after Plaintiff began working for Defendants, Defendant BARRY would repeatedly stick his tongue out and try to lick Plaintiff's face.

20. Shortly after Plaintiff began working for Defendants, Defendant BARRY would repeatedly try and grab Plaintiff's buttocks.

21. Approximately three or four times during Plaintiff's employment, Defendant BARRY would hug Plaintiff.

22. In or around July 2011, Defendant BARRY asked Plaintiff if he (Plaintiff) wanted to go out to eat after work with Defendant BARRY.

23. Plaintiff declined Defendant BARRY's offer.

24. In or around September 2011, Plaintiff said to Defendant BARRY "Stop drawing these things (penises) on the back of my check, I really don't like it" and "stop with the jokes…stay away from me."

25. A few weeks later, despite Plaintiff's protests, Defendant BARRY again drew a penis on the back of Plaintiff's pay check.

26. In or around the end of September 2011, despite Plaintiff's protests, Defendant BARRY again stuck his tongue out in a sexually suggestive manner close to Plaintiff's face.

## RACIAL DISCRIMINATION

27. At all times material, all of the non-management "Drivers" were minorities.

28. At all times material, Defendant MARK knew and knows that Plaintiff is Hispanic.

29. In or around August 2011, Plaintiff complained to Defendant MARK about his (Mark's) constant demeaning tone towards him and the other minority workers. Plaintiff said **"You can't be talking to us like this. It's disrespectful. It's offensive to me."**

30. Defendant MARK responded "What is it with *you* guys… **you must have a Latin attitude.**"

31. Defendant MARK also said to Plaintiff "I can't believe the ways things are going in the recession that you can tell me that you think I am talking offensive," insinuating that Plaintiff would have to endure his (Defendant MARK's) harassment or be terminated with little hope of finding a new job.

32. On or about December 27, 2011, Plaintiff again complained to Defendant MARK about his continued harassment stating, "Why are you always so offensive towards **us**? Why are you always so offensive towards me, the **Spanish guys**, and even the **Black guys**?"

## RETALIATION

33. On or about January 3, 2012, Defendants terminated Plaintiff's employment under the pretext that he was stealing boxes.

34. On or about January 3, 2012, Defendants terminated Plaintiff's employment because of his race.

35. On or about January 3, 2012, Defendant terminated Plaintiff's employment because of his gender/sex.

36. On or about January 3, 2012, Defendants terminated Plaintiff's employment because he opposed Defendants' unlawful behavior.

37. On or about January 3, 2012, Plaintiff informed Defendant MARK that he would be obtaining an attorney to pursue a harassment and discrimination claim against Defendants.

38. On or about January 10, 2012, Plaintiff retained an attorney to help him pursue his claims against Defendants.

39. Approximately three days later, Plaintiff informed "Vince," his union representative, that Plaintiff had retained an attorney.

40. Upon information and belief, Defendants' management was made aware that Plaintiff had hired an attorney.

41. On or about January 17, 2012, in retaliation for Plaintiff having sought legal counsel, Defendants filed a police report alleging that Plaintiff had stolen property from Defendants.

42. On or about January 17, 2012, in retaliation for Plaintiff having sought legal counsel, Plaintiff was given a Desk Appearance Ticket and given a date where he was to appear in court and be prosecuted on the false charges.

43. In or around February or March 2012, Plaintiff's former co-workers, William Rivera and Mark Mungo (both who were still working for Defendants) had a conversation with Defendants' employee, Cam Pardo, about Plaintiff's alleged theft of Defendants' property.

44. In that conversation, Cam Pardo told Mr. Rivera and Mr. Mungo that Plaintiff did not steal any boxes, but rather Plaintiff had mis-delivered Defendants' boxes/property to a restaurant called "Elmo."

45. Cam Pardo then went on to tell Mr. Rivera and Mr. Mungo that he personally picked up the mis-delivered merchandise from Elmo and returned it to Defendants' warehouse.

46. On or about July 24, 2012, the criminal charges against Plaintiff were dismissed.

47. On or about August 27, 2012 Plaintiff filed his original Complaint with the United States District, Southern District of New York.

48. On or about January 3, 2013, Defendants filed their Answer with a Counterclaim against Plaintiff for conversion in the gross amount of $700.40 for the merchandise Defendants allege Plaintiff stole.

49. Defendants filed their counter-claim in retaliation for Plaintiff having filed his original complaint.

50. Defendants field their counterclaim knowing that the alleged "stolen merchandise" had not been stolen and had been recovered by their own employee.

51. Defendants field their counterclaim knowing that their counterclaim lacks/lacked merit.

52. Defendants field their counterclaim with the specific intent to deter other employees from exercising their legal rights and/or filing a lawsuit against Defendants

53. Defendants would not have harassed Plaintiff but for his race.

54. Defendants would not have harassed Plaintiff but for his gender/sex.

55. Defendants would not have reported Plaintiff to the police or filed a counter-claim but for his exercising his protected rights.

56. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

57. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, he suffered severe emotional distress and physical ailments.

58. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

59. Defendant ARTHUR, as an owner of Defendant BSC, is individually and personally liable to Plaintiff for the discrimination under New York State Law.

60. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands Punitive Damages as against all the Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## UNDER FEDERAL LAW
## 42 U.S.C. Section 1981

61. Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

62. 42 U.S.C. Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce

contracts" defined For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

63. Plaintiff, a member of the Hispanic race, was discriminated against because of his race as provided under 42 U.S.C. Section 1981 and has suffered damages as set forth herein.

## AS A SECOND CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## DISCRIMINATION

64. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

65. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived race . . . gender . . . of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

66. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of his gender and race, together with sexual harassment.

## AS A THIRD CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## RETALIATION

67. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

68. New York City Administrative Code Title 8-107(7) provides that:

   "It shall be unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter..."

69. Defendants engaged in an unlawful and retaliatory discriminatory practice by retaliating, and otherwise discriminating against the Plaintiff, including, but not limited to terminating Plaintiff's employment, filing a false police report, and filing a meritless counterclaim.

## AS A FOURTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## SUPERVISOR LIABILTY

70. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

71. New York City Administrative Code Title 8-107(13) Employer liability for discriminatory conduct by employee, agent or independent contractor.

   (a) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

   (b) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

   (1) the employee or agent exercised managerial or supervisory responsibility; or

   (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective

action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

72. Defendants violated the section cited herein as set forth.

## AS A FIFTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## INTERFERENCE WITH PROTECTED RIGHTS

73. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

74. New York City Administrative Code Title 8-107(19) Interference with protected rights. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten, or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

75. Defendants violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION
## UNDER STATE LAW
## DISCRIMINATION

76. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

77. Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's race. . . sex . . . to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

78. Defendants engaged in an unlawful discriminatory practice by discriminating against the Plaintiff because of his sex and race, together with sexual harassment.

79. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

### AS A SEVENTH CAUSE OF ACTION
### UNDER STATE LAW
### RETALIATION

80. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

81. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice:

> "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

82. Defendants engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer, including, but not limited to terminating Plaintiff's employment, filing a false police report, and filing a meritless counterclaim.

## AS AN EIGHTH CAUSE OF ACTION
## UNDER STATE LAW
## AIDING & ABETTING

83. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

84. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice:

> "For any person to aid, abet, incite, compel, or coerce the doing of any acts forbidden under this article, or attempt to do so."

85. Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A NINTH CAUSE OF ACTION
## UNDER STATE LAW
## ASSAULT AND BATTERY
## AS TO DEFENDANT BARRY ONLY

86. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

87. That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of Defendants, their agents, servants and/or employees, suddenly and without provocation did physically assault and batter Plaintiff herein and did cause unwelcomed contact, causing the Plaintiff to sustain damages.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A. Declaring that the Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. Section 1981, the New York City Administrative Code Title 8, §8-107 et. Seq., the New York Executive Law, and the New York Common Law; and that the Defendants harassed and discriminated against Plaintiff on the basis of gender, race, along with sexual harassment, assault and battery, and retaliation;

B. Declaring that Defendants assaulted and battered Plaintiff.

C. Awarding damages to the Plaintiff, retroactive to the date of discharge, for all lost wages and benefits, past and future, back pay and front pay, resulting from Defendants' unlawful termination of employment and to otherwise make Plaintiff whole for any losses suffered as a result of such unlawful employment practice;

D. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to reputation.

E. Awarding Plaintiff punitive damages;

F. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

## JURY DEMAND

Plaintiff demands a jury trial on all issues to be tried.

**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly and severally in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: New York, New York
       January 17, 2012

                                                Arcé Law Group, P.C.
                                                Attorneys for Plaintiff

By:       _____
                  Bryan S. Arce, Esq. (ba2671)
                  30 Broad Street, 35th Floor
                  New York, New York 10004
                  (212) 248-0120