UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RAYMOND ROSAS,

                        Plaintiff,                      Index No.: 12 CIV 6557-VB-HBP

      -against-


BALTER SALES CO. INC., ARNOLD BALTER,
individually, MARK BALTER, individually, and
BARRY ROSENBERG, individually,

                        Defendants.
-----------------------------------------------------------------X


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**TABLE OF CONTENTS**

I.      Preliminary Statement……………………………………………………………1

II.     Statement of Facts…………………………………………………………………..1

III.    Argument………………………………………………………………...2

          A.  Plaintiff's Section 1981 Claim Should Be Dismissed (First Cause of Action).2

             1.  Discriminatory Termination……………………………………….. 3

             2.  Hostile Work Environment……………………………………... 7

          B.  The New York City State and City Law Claims Should Be Dismissed……..10

             1.  Discrimination Claims (Second, Fourth, and Sixth Cause of Action).10

                a.  Race Discrimination…………………………………………11

                b.  Sexual Harassment…………………………………………...12

                    1.  The Alleged Sexual Harassment Did Not Occur Because of Plaintiff's Gender, nor Was it Severe or Pervasive………………………………………...12

                    2.  Plaintiff's Description of the Sexual Harassment is Not Credible……………………………………...16

                      3.  Plaintiff Cannot Impute Rosenberg's Conduct to Balter Sales Since Rosenberg Was Not His Supervisor and He Never Complained to a Supervisor……………………………………18

             2.  Retaliation (Third and Seventh Causes of Action)…………………..20

                a.  Retaliatory Termination……………………………………...20

                b.  Filing the Police Report………………………………...23

                c.  Retaliatory Counterclaim……………………………………24

              3.  Interference With Protected Rights (Fifth Cause of Action)………...26

              4.  Aiding and Abetting (Eighth Cause of Action)……………………...27

              5.  Assault and Battery (Ninth Cause of Action)…………………….....27

              6.  State Law Claims Against Defendant Arnold Balter………………..28

IV.    Conclusion………………………………………………………………...29

TABLE OF AUTHORITIES

*Acosta v. Loews Corp.*, 276 A.D.2d 214, 217 (1st Dept. 2000)........................................ 31

*Anand v. New York State Dep't of Taxation & Fin.*, 10-CV-5142 SJF WDW,
   2012 WL 2357720, (E.D.N.Y. June 18, 2012) ......................................................... 30

*Arroyo v. WestLB Admin., Inc.*, 54 F. Supp. 2d 224 (S.D.N.Y. 1999) ........................... 18

*Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460 (S.D.N.Y.1998)...................................... 18

*Ballard v. Children's Aid Soc'y.*, 781 F. Supp. 2d 198 (S.D.N.Y. 2011) ..................... 22

*Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731 (1983) ................................... 27

*Brown v. Mustang Sally's Spirits & Grill, Inc.*, 12-CV-529S, 2012 WL 4764585,
   (W.D.N.Y. Oct. 5, 2012)............................................................................................ 28

*Bush v. Fordham Univ.*, 452 F. Supp. 2d 394 (S.D.N.Y. 2006) ................................... 12

C.P.L.R. § 215(3)................................................................................................................ 31

*Cadet v. Deutsche Bank Sec. Inc.*, 11 CIV. 7964 CM, 2013 WL 3090690 (S.D.N.Y. June 18,
   2013) ........................................................................................................................... 12

*Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284 (S.D.N.Y. 2012) ............................. 11

*Campos v. BASF Catalysts, LLC*, 7:07-CV-7068 (WWE), 2009 WL 1616378 (S.D.N.Y. May 19,
   2009) ........................................................................................................................... 10

*Campos v. BASF Catalysts, LLC*, No. 07-7068, 2009 WL 1616378 (S.D.N.Y. May 19, 2009).... 6

*Caravantes v. 53rd St. Partners, LLC*, 09 CIV. 7821 RPP, 2012 WL 3631276 (S.D.N.Y. Aug.
   23, 2012) ..................................................................................................................... 17

Conde v. Sisley Cosmetics USA, Inc., 11 CIV. 4010 RJS, 2012 WL 1883508 (S.D.N.Y. May 23,
   2012); .......................................................................................................................... 30

*Copantila v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253 (S.D.N.Y. 2011) ........... 15

*Cordoba v. Beau Deitl & Assocs.*, No 02 Civ. 4951(MBM), 2003 WL 22902266, (S.D.N.Y. Dec.
   2, 2003) ....................................................................................................................... 25

*Curtis v. Airborne Freight Corp.*, 87 F. Supp. 2d 234 (S.D.N.Y.2000) ...................... 13

*Dao v. Oppenheimer Funds, Inc.*, 10 CIV. 8413 KBF, 2012 WL 1681355 (S.D.N.Y. May 2,
   2012) ........................................................................................................................... 14

*Davis-Bell v. Columbia University*, 851 F. Supp. 2d 650 (S.D.N.Y. 2012) ................. 12

*Douglass v. Rochester City Sch. Dist.*, 522 Fed App'x 5 (2d Cir. 2013).................... 24

*E.E.O.C. v. Bloomberg L.P.*, No. 07 Civ. 8383(LAP), 2013 WL 4799161 (S.D.N.Y. Sept. 9,
   2013) ........................................................................................................................... 11

*Eng–Hatcher v. Sprint Nextel Corp.*, No. 07–CV–7350, 2008 WL 4865194 (S.D.N.Y. Oct. 31,
   2008) ........................................................................................................................... 28

*Ergo v. International Merchant Servs., Inc.*, 519 F.Supp.2d 765 (N.D.Ill. 2007)........ 28

*Farren v. Shaw Envtl., Inc.*, 852 F. Supp. 2d 352 (W.D.N.Y. 2012)........................... 15

*Feliciano v. Alpha Sector*, No. 00 Civ. 9309, 2002 WL 1492139 (S.D.N.Y. July 11, 2002)....... 18

*Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712 (2d Cir. 2010) ............ 10

*Findlay v. Reynolds Metals Co.*, 82 F. Supp. 2d 27 (N.D.N.Y.2000) ......................... 13

*Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295 (N.Y. 2004) ........................... 14, 21, 23, 30

*Fried v. LVI Servs., Inc.*, No. 10 Civ. 9308(JSR), 2011 WL 2119748
   (S.D.N.Y. May 23, 2011)............................................................................................ 30

*Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520 (S.D.N.Y. 2008)
   ..................................................................................................................................... 29

*Guangyu Zhao v. Time, Inc.*, No. 08 Civ. 8872(PAC)(MHD), 2010 WL 3377498 (S.D.N.Y. August 24, 2010)..........................................................................................................................18

*Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336 (S.D.N.Y. 2006)..........................................12

*Iannone v. ING Fin. Servs., LLC*, 49 A.D.3d 391 (1st Dep't 2008) .......................................26

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005)....................................................19

*Jessamy v. City of New Rochelle, New York*, 292 F. Supp. 2d 498 (S.D.N.Y. 2003).................12

*Jones v. Potter,* 301 F. Supp.2d 1 (D.D.C. 2004) ..................................................................18

*Kaur v. New York City Health and Hospitals Corp.*, 688 F.Supp.2d 317 (S.D.N.Y. 2010).........14

*Liburd v. Bronx Lebanon Hosp. Ctr.*, 2009 WL 900739 (S.D.N.Y. Apr. 3, 2009) .....................11

*Longmire v. Wyser-Pratte*, No. 05-CV-6725, 2007 WL 2584662 (S.D.N.Y. Sept. 6, 2007).......11

*Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249 (E.D.N.Y. 2009).......................22

*Marchiano v. Berlamino*, 10 CIV. 7819 LBS, 2012 WL 4215767 (S.D.N.Y. Sept. 20, 2012)....27

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ........................................................5

*Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 946 N.Y.S.2d 27  (2012). ......................14, 27

*Mitra v. State Bank of India*, No. 03 Civ. 6331, 2005 WL 2143144 (S.D.N.Y. Sept. 6, 2005) ... 22

*Murray v. Visiting Nurse Servs. Of N.Y.*, 528 F. Supp.2d 257 (S.D.N.Y. 2007)..........................12

*O'Connor v. Smith & Laquercia, LLP* ..................................................................................28

*Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80, 118 S.Ct. 998 (1998)...........................15

*Orr v. James D. Julia, Inc.*, Civ. No. 07–51–B–W, 2008 WL 2605569
(D.Me. June 27, 2008) ......................................................................................................28

*Osoriio v. Source Enters.*, 05 Civ. 10029 (JSR), 2006 WL 2548425 (S.D.N.Y. Sept. 5, 2006) ..18

Pacheco v. Comprehensive Pharmacy Servs., 12 CIV. 1606 AJN, 2013 WL 6087382
(S.D.N.Y. Nov. 19, 2013) ....................................................................................................6

*Panzarino v. Deloitte & Touche LLP*, No. 05-8502, 2009 WL 3539685
(S.D.N.Y. Oct. 29, 2009) ...................................................................................................14

*Peone v. Cnty. of Ontario*, 12-CV-6012 CJS, 2013 WL 775358 (W.D.N.Y. Feb. 28, 2013) ......17

*Priore v. New York Yankees*, 307 A.D. 2d 67 (1st Dep't 2003) .................................................22

*Quinn v. Green Tree Credit Corp.*, 159 F.3d 759 (2d Cir. 1998) ...............................................17

*Raniola v. Bratton*, 243 F.3d 610 (2d Cir. 2001)...................................................................18

*Redd v. New York Div. of Parole*, 678 F.3d 166 (2d Cir. 2012) ...............................................16

*Redd v. New York State Div. of Parole*, 07-CV-120(NGG)(LB), 2010 WL 1177453 (E.D.N.Y. Mar. 24, 2010)..................................................................................................................15

*Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) ..........................................23

*Rivera v. Smith*, 07CIV3246(BSJ)(AJP), 2009 WL 124968 (S.D.N.Y. Jan. 20, 2009)...............10

*Robles v. Goddard Riverside Cmty. Ctr.*, 08 CIV 4856, 2009 WL 1704627
(S.D.N.Y. June 17, 2009).....................................................................................................30

*Schanfield v. Sojitz Corp. of Am.,* 663 F. Supp. 2d 305 (S.D.N.Y. 2009) ..........................22, 30, 31

*Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597 (2d Cir. 2006) ...........................................11

*Shepherd v. BCBG Max Azria Grp., Inc.*, No. 11-7634, 2012 WL 4832883 (S.D.N.Y. Oct. 11, 2012) .................................................................................................................................6

*Singh v. State Off. of Real Prop.*, 40 A.D.3d 1354 (3d  Dep't 2007)...........................................26

*Snell v. Suffolk Cnty.*, 782 F.2d 1094 (2d Cir.1986) ..............................................................12

*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 113 S. Ct. 2742 (1993) ....................................10

*Stembridge v. City of New York,* 88 F.Supp.2d 276, 286 (S.D.N.Y.2000) .................................13

*Thomas v. New York City Health and Hospitals Corp.*, No. 02 Civ. 5159(RJH), 2004 WL 1962074 (S.D.N.Y. Sept. 2, 2004)......................................................................................11

*Thompson v. Morris Heights Health Ctr.*, 09 CIV. 7239 PAE THK, 2012 WL 1145964 (S.D.N.Y. Apr. 6, 2012) .................................................................................................. 27

*Thompson v. Morris Heights Health Ctr.*, 09-7239, 2012 WL 1145964 (S.D.N.Y. Apr. 6, 2012) .................................................................................................................................................. 29

*Totem Taxi, Inc. v. New York State Human Rights Appeal Board*, 65 N.Y.2d 300 (1985) .......... 21

*Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp. 2d 257 (S.D.N.Y. 2000) ................................ 25

*Williams v. Metro-N. Commuter R. Co.*, 11 CIV. 7835 CM, 2012 WL 2367049 (S.D.N.Y. June 20, 2012) ................................................................................................................................ 12

*Williams v. New York City Housing Authority*, 872 N.Y.S.2d 27 (1st Dept. 2009) ..................... 15

*Zakrzewska v. New School*, 14 N.Y.3d 469, 479 (2010) ............................................................. 21

## I.      Preliminary Statement

Plaintiff Raymond Rosas ("Rosas") was terminated from his employment as a driver by Defendant Balter Sales Co. Inc. ("Balter Sales") based on Balter Sales's good faith belief that he had stolen merchandise on multiple occasions.[1] After he was terminated, Plaintiff met with an attorney and subsequently claimed that the termination was due to a variety of reasons: his race, his gender, his reporting of unsafe truck conditions, and his complaints about Balter Sales' vehicle operator affidavits.  Plaintiff has dropped most of his theories and his sole remaining federal claim is for Section 1981 race discrimination. As explained below, that claim cannot survive as a matter of law.

Plaintiff also asserted several state law claims. The thrust of these claims is that another male employee (Defendant Rosenberg) sexually harassed Plaintiff. These claims cannot survive against any of the Defendants as a matter of law for the reasons discussed below.  Under no circumstances can the claims survive as against Balter Sales since Plaintiff testified that the harassing behavior stopped after he reported it to Balter Sales management.

Defendants respectfully request that the Court dismiss all of Plaintiff's claims with prejudice.

## II.      Statement of Facts

Balter Sales is a restaurant supply company that has operated on the Bowery for more than a century. *See* Defs.' R. 56.1 Stmt. ¶¶ 1, 3. Plaintiff was hired as a driver for Balter Sales in 2010. *Id*. ¶ 4. During the last week of 2011, Balter Sales received multiple calls from angry customers missing items from their orders. *Id*. ¶¶ 8, 14. The orders were all missing the same

---

[1]      This evidence was sufficiently convincing that the New York Police Department arrested Plaintiff and the New York County District Attorney filed a criminal complaint.

item: champagne flutes (Item No. 3795), an important item at that time of year given the upcoming New Year's Eve celebrations, and the orders were all part of deliveries made by Plaintiff Raymond Rosas. *Id*. ¶¶ 5, 12, 18. Plaintiff's supervisor, Marc Balter, investigated the matter and determined that the missing items were on the Plaintiff's truck when he began his route. *Id*. ¶¶ 20-21, 23-24. Marc Balter also discovered that the paperwork for the shipments was manipulated, which caused Balter to believe that Plaintiff had attempted to disguise the number of boxes of champagne glasses that he had left with that day. *See id*. ¶¶ 13, 15. Plaintiff claimed he did not know what happened to the missing boxes. *Id*. ¶¶ 16, 27.  After discovering that the same item was missing from deliveries made by Rosas three times in a single week, Balter Sales terminated Plaintiff for stealing merchandise. *See id*. ¶ 27.

Balter Sales reported the matter to the police and Plaintiff was arrested. *Id*. ¶ 46. Ultimately, the case was dismissed by the New York County District Attorney. *Id*. ¶ 52. After Balter Sales terminated Plaintiff (and filed the police report) Plaintiff subsequently engaged counsel, who brought the instant case. *Id*. ¶¶ 46-48. On January 13, 2012, Balter Sales received a letter from Plaintiff's counsel demanding money and asserting for the first time that Plaintiff was subjected to a racially and sexually hostile work environment during his time at Balter Sales. *Id*.

## III.   Argument

### A.  Plaintiff's Section 1981 Claim Should Be Dismissed (First Cause of Action)

Plaintiff's sole federal claim is race discrimination under 42 U.S.C. § 1981 asserted against Defendants Marc Balter and Balter Sales.[2] The Amended Complaint does not specifically articulate Plaintiff's theory of racial discrimination, but for purposes of this motion, viewing the

---

[2]     Plaintiff originally asserted this claim against all Defendants, but recently withdrew the claim as against Defendants Arnold Balter and Barry Rosenberg in response to Defendant's letter warning of Rule 11 sanctions. *See* Decl. of Lisa M. Sofio ("Sofio Decl."), Exs. A, B.

allegations in the light most favorable to Plaintiff, it appears that the only conceivable theories of racial discrimination are discriminatory termination and hostile work environment. When viewed in the light most favorable to the Plaintiff, both claims must fail.

### 1. Discriminatory termination

A § 1981 discriminatory termination claim is analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004). Under this framework, the employee must first make a *prima facie* showing that (1) he is a member of a protected class, (2) he was qualified for the position, (3) he suffered an adverse employment action, and (4) the adverse employment action took place under circumstances that give rise to an inference of unlawful discrimination. *McDonnell Douglas*, 368 F.3d at 802. If the Plaintiff is successful, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the employer can do so, the employee must then establish that the reason articulated is a mere pretext for discrimination. *See id.* at 803.  For purposes of this motion, Defendants do not dispute that Plaintiff is a member of a protected class, that he was qualified for the position of driver at the time he was hired, or that his termination was an adverse employment action. Plaintiff still fails to make a *prima facie* showing, however, because he cannot point to any circumstances that give rise to an inference of unlawful discrimination.

To satisfy the fourth prong of the *prima facie* case, an employee must either present (1) **direct** evidence of discriminatory intent or (2) show, through the use of comparators, that the employee was treated differently than similarly situated employees. *See Shepherd v. BCBG Max Azria Grp., Inc.*, No. 11-7634, 2012 WL 4832883, at *19 (S.D.N.Y. Oct. 11, 2012) *adopted by* 2012 WL 6150854 (S.D.N.Y. Dec. 10, 2012); *Campos v. BASF Catalysts, LLC*, No. 07-7068,

2009 WL 1616378, at *6 (S.D.N.Y. May 19, 2009). "Direct evidence" is "smoking gun" proof that an action was taken for a discriminatory reason. *Pacheco v. Comprehensive Pharmacy Servs.*, 12 CIV. 1606 AJN, 2013 WL 6087382, at *9 (S.D.N.Y. Nov. 19, 2013). There is no evidence in the record whatsoever that Balter Sales terminated Plaintiff because of his race, and certainly no direct evidence. To the contrary, Plaintiff testified that his conversation with Marc Balter that culminated in his firing was limited to missing boxes with no mention made of Plaintiff's race. *See* Def's. 56.1 ¶ 29. Plaintiff's Union Representative agreed -- he concluded that Plaintiff's wrongful termination case was without merit based on the facts Plaintiff presented. *See id.* ¶ 37.

As to comparators, there is no evidence in the record that non-Hispanic similarly situated employees, i.e., other drivers who were believed to be stealing merchandise, were not terminated. Thus, Plaintiff cannot demonstrate circumstances giving rise to an inference of unlawful discrimination and therefore cannot establish a *prima facie* case for discriminatory termination. His Section 1981 claim fails on these grounds alone.

Even if Plaintiff could somehow avoid the need to establish a *prima facie* case, his claim would still fail since Defendant had a legitimate, non-discriminatory reason for firing Plaintiff; i.e., his supervisor's good faith belief that Plaintiff was stealing merchandise, as demonstrated by the following undisputed facts:

On December 28, 2011, Rosas's route included deliveries of Item No. 3795 (champagne flutes) to Elmo's Restaurant and Becco, another restaurant. *See* Def's. 56.1 ¶ 5. In accordance with Balter Sales policy, Defendant Barry Rosenberg (warehouse employee) checked that all of the items in Rosas's orders were assembled onto "flats" or "pallets" for the driver to load onto his truck. *See id.* ¶ 6. After checking the order for completeness, Rosenberg initialed the sales

order form to indicate that all merchandise was on the flat and ready for delivery. *See id.* ¶ 7. Rosas then left the warehouse for the day to complete his route.  *See id.* Later that day, Balter Sales received a telephone call from Minerva Taron from Elmo's stating that her order was missing eight boxes of champagne flutes (Item No. 3795). *Id.* ¶ 8. Taron was upset because the flutes were an important item for her restaurant's New Year's Eve celebration. *Id.* ¶ 9. Marc Balter attempted to call Rosas on his cell phone to learn where the flutes had gone, but Rosas did not answer or return the call for the entire day. *Id.* ¶ 10. The next day, when asked what happened to the missing glasses, Rosas claimed that he did not know. *Id.* ¶ 11.

Marc Balter's suspicions were aroused because Item No. 3795 was available in the warehouse. *See id.* ¶ 12.  It is one of Balter Sales's most popular items and the store ensures that the stock is plentiful leading up to New Year's Eve. *Id*. Furthermore, when Rosas handed in his paperwork for the delivery, it appeared to have been manipulated. *See id.* ¶ 13.  Specifically, a "0" with a line through it was written on top of the handwritten number "8" in the "shipped" column for Item No. 3795. *Id*. The number "13" was written on top of the handwritten number "21" in the "total cartons shipped" space. *Id*. While drivers do sometimes need to record changes to the packing slips to reflect missing or backordered items from time to time, in this instance the changes were made in a manner so as to avoid detection. *See id.* ¶¶ 34-35.

There was also a problem with the Becco order. *See id.* ¶ 14. As with the Elmo's Restaurant order, Balter Sales received an angry call from the customer who did not receive the champagne flutes. *Id*.  Once again, the paperwork for this delivery appeared to have been manipulated so that the "2" in the "shipped" column was changed to a "0" with a line through it and the change appeared to have been made in a manner so as to avoid detection. *Id.* ¶¶ 15, 35.

When Marc Balter asked Rosas what happened to the flutes, he again stated that he did not

know. *Id.* ¶ 16.

Later that week, Rosas was assigned to make a delivery to Pigalle Restaurant of six cases

of Item No. 3795 (champagne flutes). *Id.* ¶ 18. However, Pigalle never received the champagne

flutes and called Balter to complain. *Id.* ¶ 19. Marc Balter immediately spoke to the manager

who had pulled and checked Rosas's deliveries that morning, Arthur DiBiasi. *Id.* ¶ 20. When

Balter told DiBiasi what had happened, DiBiasi was angry because he distinctly remembered

loading the six cases of Item No. 3795 that morning. *Id.* ¶ 21. Since this was the third incident

where the same item went missing in one week, Marc Balter decided to check the video

surveillance. *Id.* ¶ 23. With the assistance of Barry Rosenberg, Balter was able to confirm that all

three missing orders (Elmo's Restaurant, Becco, and Pigalle) were assembled on Rosas's pallets

for delivery. *Id*. The video evidence confirmed Marc Balter's suspicions and he immediately

attempted to contact Rosas to discuss the matter with him. *Id.* ¶ 24. Rosas did not answer his

phone and did not return a message Balter left at Rosas's home.  *Id.* ¶ 25.  Balter finally spoke to

Rosas the next workday Tuesday, January 3, 2012. *Id.* ¶ 26.  When asked, Rosas could not

explain the missing Becco merchandise and claimed he lost the paperwork for that delivery. *Id.* ¶

27. Marc Balter terminated Rosas for theft and explained that if he did not tell Balter who he was

selling the merchandise to, he would report the crimes to the police.[3] *Id.* ¶ 28.

---

[3]    Later in the month, another Balter customer, Beacon, called to complain about a missing
item, specifically goblet glasses (Item No. 04757), from an order. *Id.* ¶ 30. When Balter reviewed
the paperwork for this order, they learned that Rosas had made this delivery. *Id.* ¶ 31. The
paperwork for this delivery was manipulated to reflect that "0" boxes were shipped, instead of
the original "4." *Id.* ¶ 32. In this instance, the manipulation is quite obvious since the pink copy
Balter retained reflects the original "4." *Id.* ¶ 33. Although this evidence was not discovered until
after Rosas was terminated, it is relevant under the after-acquired evidence doctrine. *See Greene
v. Coach, Inc.*, 218 F. Supp. 2d 404, 412 (S.D.N.Y. 2002) (*citing McKennon v. Nashville Banner
Pub'g Co.*, 513 U.S. 352, 362 (1995).

Plaintiff's counsel has articulated a theory that Rosas did not steal the merchandise, but, rather that it was somehow "misdelivered" as opposed to being stolen. This theory does not save Plaintiff's claim. First, under this theory, Plaintiff concedes that the champagne glasses did not reach the intended customers, a fact which supports the reasonableness of Marc Balter's belief that the merchandise was stolen. Second, in order to demonstrate pretext, a plaintiff must do more than show that the defendant's reason for termination was incorrect or even false, but also that the true reason for the termination is discriminatory. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516, 113 S. Ct. 2742, 2752 (1993); *Campos v. BASF Catalysts, LLC*, 7:07-CV-7068 (WWE), 2009 WL 1616378 (S.D.N.Y. May 19, 2009) ("The law does not protect misplaced conclusions of fault or terminations based on the wrong reasons, unless the reasons are pretext for discrimination. Rather, the law only protects employees from termination because of their race or national origin."); *Rivera v. Smith*, 07CIV3246(BSJ)(AJP), 2009 WL 124968, at *5 (S.D.N.Y. Jan. 20, 2009). As explained above, there is no evidence that Balter terminated Plaintiff on account of his race. Plaintiff cannot demonstrate that the true reason for the termination was discrimination regardless of whether the merchandise was "misdelivered" or stolen.[4] Plaintiff, therefore, cannot establish pretext and fails, again, to meet his burden.

---

[4]     In any event, Plaintiff cannot support this "misdelivery" theory. Under this theory, Camilo Pardo, another Balter Sales employee purportedly found boxes of champagne flutes at Elmo's Restaurant after the alleged theft and concluded that the merchandise had not been stolen, but rather misdelivered. The logical explanation is that the boxes Pardo saw was the replacement shipment sent by Balter Sales. Defs.' 56.1 ¶ 17. In any event, it is undisputed that Pardo was not aware that Rosas was accused of stealing from multiple customers, not just Elmo's Restaurant. *See id.* ¶ 38. Plaintiff has no explanation for what happened to the other missing orders.

## 2.  Hostile Work Environment

To establish a hostile work environment claim under § 1981, a plaintiff "must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his] employment were thereby altered." *Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723-24 (2d Cir. 2010) (quotations omitted). Plaintiff's hostile work environment claim is based on two incidents. First, he claims that Marc Balter spoke to him and other minority workers in a demeaning tone. Am. Compl. ¶ 29. Second, in or around August 2011, in response to Plaintiff's complaints to Marc Balter about a wide range of issues, Marc Balter allegedly told Plaintiff "What is it with you guys . . . you must have a Latin attitude." *See* Am. Compl. ¶¶ 29-30. These isolated incidents do not amount to a hostile work environment as a matter of law.

As to the demeaning tone, a hostile work environment claim requires more than vague, conclusory accusations. *See E.E.O.C. v. Bloomberg L.P.*, No. 07 Civ. 8383(LAP), 2013 WL 4799161, *20 (S.D.N.Y. Sept. 9, 2013); *Thomas v. New York City Health and Hospitals Corp.*, No. 02 Civ. 5159(RJH), 2004 WL 1962074, *15 (S.D.N.Y. Sept. 2, 2004). Moreover, Plaintiff cannot establish that the use of the tone was motivated by discriminatory racial animus. *See Campbell v. Cellco P'ship*, 860 F. Supp. 2d 284, 300 (S.D.N.Y. 2012); *Liburd v. Bronx Lebanon Hosp. Ctr.*, 2009 WL 900739, at *8 (S.D.N.Y. Apr. 3, 2009); *Longmire v. Wyser-Pratte*, No. 05-CV-6725, 2007 WL 2584662, at *12 (S.D.N.Y. Sept. 6, 2007). Plaintiff testified that Balter used this tone with all drivers, Rosas Tr. at 134,[5] and it is undisputed that some of the drivers were

---

[5]      All of the deposition transcripts referred to herein are cited as "[deponent name] Tr. at [page number]" and are being submitted to Your Honor on a CD in accordance with Your Honor's Individual Practice Rule 4.D.

white. Defs.' 56.1 ¶ 58. Thus, while Plaintiff may have had hurt feelings, his testimony shows that the use of the tone was not discriminatory intimidation, ridicule or insult.

As to the "Latin attitude" comment, a single instance of a discriminatory comment does not establish a hostile work environment. The test for what constitutes a hostile work environment has both objective and subjective elements: a "jury must be able to conclude that the work environment both objectively was, and subjectively was perceived by the plaintiff to be, sufficiently hostile to alter the conditions of employment for the worse." *Schiano v. Quality Payroll Sys., Inc.,* 445 F.3d 597, 604 (2d Cir. 2006).  In determining whether the plaintiff's environment was sufficiently hostile, courts must consider the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance," *Bush v. Fordham Univ.*, 452 F. Supp. 2d 394, 412-13 (S.D.N.Y. 2006) (quoting *Harris*, 510 U.S. at 23)). A finding of a hostile work environment requires "more than a few isolated incidents of racial enmity." *Snell v. Suffolk Cnty.,* 782 F.2d 1094, 1103 (2d Cir.1986). "'Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.'" *Davis-Bell v. Columbia University*, 851 F. Supp. 2d 650, 672 (S.D.N.Y. 2012) (quoting *Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997)); *see Williams v. Metro-N. Commuter R. Co.*, 11 CIV. 7835 CM, 2012 WL 2367049 (S.D.N.Y. June 20, 2012); *Murray v. Visiting Nurse Servs. Of N.Y.*, 528 F. Supp.2d 257, 278 (S.D.N.Y. 2007) (collecting cases and granting summary judgment because, *inter alia*, the plaintiff failed to establish that the purported harassment interfered with his work performance); *Cadet v. Deutsche Bank Sec. Inc.*, 11 CIV. 7964 CM, 2013 WL 3090690, at *10-11 (S.D.N.Y. June 18, 2013); *Jessamy v. City of New Rochelle, New York*, 292 F. Supp. 2d 498, 511 (S.D.N.Y. 2003)

9

("Conduct that can be categorized as a few isolated incidents, teasing, casual comments or sporadic conversation will not be deemed to create a hostile work environment.").

When viewing the totality of the circumstances, Marc Balter's alleged conduct toward Plaintiff was not objectively severe or pervasive enough to constitute a "hostile work environment" as a matter of law. As to frequency, there was only a single comment. The comment was isolated and did not approach the steady barrage of opprobrious racial comments necessary to form a hostile work environment claim. *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 360 (S.D.N.Y. 2006) (holding that supervisors using a far more offensive term than that alleged here, combined with a "long list" of alleged mistreatment, did not create a hostile work environment); *Curtis v. Airborne Freight Corp.,* 87 F. Supp. 2d 234, 250–51 (S.D.N.Y.2000) (concluding that two isolated statements by ill-mannered supervisor are insufficient to create a hostile work environment); *Findlay v. Reynolds Metals Co.,* 82 F. Supp. 2d 27, 39 (N.D.N.Y.2000); *Stembridge v. City of New York,* 88 F.Supp.2d 276, 286 (S.D.N.Y.2000) (holding seven instances of offensive conduct over three years does not constitute a work environment permeated with racial hostility). Marc Balter's alleged acts were not physically threatening and can be considered, at most, a single offensive utterance. *See* Defs.' 56.1 ¶ 40. Such conduct does not approach the objective standard necessary to demonstrate a hostile work environment.

For the foregoing reasons, Plaintiff's Section 1981 should be dismissed in its entirety.

**B.  The New York City State and City Law Claims Should Be Dismissed**

The bulk of Plaintiff's remaining claims allege violations of state and/or city law and include: discrimination in violation of the New York City Human Rights Law ("NYCHRL") and New York State Human Rights Law ("NYSHRL"), retaliation in violation of the NYCHRL and

10

NYSHRL, supervisory liability under the NYCHRL, interference with protected rights under the NYCHRL, aiding and abetting in violation of the NYSHRL, and assault and battery. All of these claims should be dismissed.

### 1. Discrimination Claims  (Second, Fourth, and Sixth Causes of Action)

Plaintiff asserts racial discrimination claims against Balter Sales, Marc Balter, and Arnold Balter and sexual harassment claims against all Defendants.[6] All of these claims should be dismissed.

#### a. Race Discrimination

NYSHRL claims are construed in the same manner as federal discrimination claims. *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 305 n. 3 (N.Y. 2004). Plaintiff's NYSHRL race discrimination claims should be dismissed for the same reasons his Section 1981 claim should be dismissed, namely that he was terminated for stealing, not because of his race and because Marc Balter's isolated allegedly racially discriminatory comment and tone do not constitute a hostile work environment. *See* p. 2-9 *supra*.

While the NYCHRL covers a broader range of conduct than its state and federal counterparts, where, as here, a defendant adduces a legitimate non-discriminatory reason for an adverse employment action, a plaintiff must show that the real reason for the action was discrimination. *See Dao v. Oppenheimer Funds, Inc.*, 10 CIV. 8413 KBF, 2012 WL 1681355 (S.D.N.Y. May 2, 2012) *aff'd,* 515 F. App'x 31 (2d Cir. 2013) (applying NYCHRL); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 122, 946 N.Y.S.2d 27, 37 (2012). In assessing pretext, courts do not look to whether the employer's decision was wise or accurate, but rather whether it

---

[6]      Plaintiff withdrew his racial discrimination claims as against Barry Rosenberg as well as his claim that he was terminated on account of his gender in response to Defendants' Rule 11 letter. *See* Sofio Decl., Ex. B.

was made in good faith. *See Melman*, 98 A.D.3d at 107. As explained above, p. 4-7, viewing the evidence in the light most favorable to Plaintiff, Balter Sales had a good faith basis for believing that Plaintiff had stolen champagne flutes. There is no evidence that the reason was false.

As to the racial hostile work environment claim, even under the broader NYCHRL, summary judgment is available where the alleged discriminatory conduct amounts to no more than petty slights or trivial inconveniences. *See Kaur v. New York City Health and Hospitals Corp.*, 688 F.Supp.2d 317, 337-8, 40 (S.D.N.Y. 2010) (Two "obviously racist comments . . . can only be interpreted reasonably as petty slights and trivial inconveniences."); *Panzarino v. Deloitte & Touche LLP*, No. 05-8502, 2009 WL 3539685, at *8-10 (S.D.N.Y. Oct. 29, 2009) (holding that eight sex-based remarks over a thirteen-month period were insufficient); *Williams v. New York City Housing Authority*, 872 N.Y.S.2d 27, 41 (1st Dept. 2009). Here, Plaintiff's allegations can easily be described as petty slights and trivial inconveniences and completely fail to satisfy the hostile work environment standard.

### b. Sexual Harassment

#### 1. The Alleged Sexual Harassment Did Not Occur Because of Plaintiff's Gender, nor Was it Severe or Pervasive

Plaintiff, a male, claims that Barry Rosenberg, a male, sexually harassed him. In order for sexual harassment to be actionable under both the NYSHRL and the NYCHRL, it must have been perpetuated on account of the victim's gender. Courts and juries have found this inference easy to draw in most male-female sexual harassment situations, "'because the challenged conduct typically involves explicit or implicit proposals of sexual activity [and] it is reasonable to assume those proposals would not have been made to someone of the same sex.'" *Redd v. New York State Div. of Parole*, 07-CV-120(NGG)(LB), 2010 WL 1177453, at *4 (E.D.N.Y. Mar. 24, 2010) *vacated in part sub nom. Redd v. New York Div. of Parole*, 678 F.3d 166 (2d Cir. 2012))

(quoting *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80, 118 S.Ct. 998 (1998)). In a same-sex harassment case, the inference that the harassment was because of gender is not as readily drawn and a plaintiff must: "(1) provide 'credible evidence that the harasser was homosexual,' (2) demonstrate that the harasser was 'motivated by general hostility to the presence of [men] in the workplace,' or (3) 'offer direct, comparative evidence about how the alleged harasser treated members of both sexes [differently] in a mixed-sex workplace.'" *Copantila v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 299 (S.D.N.Y. 2011) (quoting *Redd*, 2010 WL 1177453, at \*4); *Oncale*, 523 U.S. at 80; *Farren v. Shaw Envtl., Inc.*, 852 F. Supp. 2d 352, 358 (W.D.N.Y. 2012) *aff'd*, 510 F. App'x 44 (2d Cir. 2013).

There is no evidence in the record that supports any of these theories. First, Plaintiff himself testified that he does not know Mr. Rosenberg's sexual orientation. Defs.' 56.1 ¶ 41. Second, there is no evidence that Rosenberg was motivated by hostility to the presence of men in the workplace. Finally, there is no comparative evidence that Rosenberg treated men differently than women. Indeed, all of the drivers were male. *Id*. ¶ 42.

The critical issue in a discrimination claim is "'whether members of one sex are exposed to disadvantageous terms or condition of employment to which members of the other sex are not exposed.'" *Oncale*, 523 U.S. at 81 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). The mere fact that harassment involves sexual content or connotations does not automatically mean that it is harassment "because of sex." *Id*. Courts have repeatedly emphasized that the laws are not intended to be a general civility code and do not reach conduct such as "male-on-male horseplay." *Oncale*, 523 U.S. at 81; *Redd v. New York Div. of Parole*, 678 F.3d 166, 176 (2d Cir. 2012). As explained by the Supreme Court:

> In same-sex (as in all) harassment cases, th[e] inquiry requires
> careful consideration of the social context in which particular

> behavior occurs and is experienced by its target. A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field—even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

*Oncale*, 523 U.S. at 81.

Assuming Plaintiff's sexual harassment allegations are credible – which, as explained below, they are not – common sense and an appropriate sensitivity to social context would dictate that the alleged conduct was not a form of gender hostility. Again, all of the Balter Sales drivers were male. Defs.' 56.1 ¶ 42. Indeed, Plaintiff himself alleged and testified that he interpreted the "penis drawings" as a joke. *See* Am. Compl. ¶ 24; Rosas Tr. at 95. Rosenberg's alleged conduct, while "boorish and juvenile," was not a form of gender discrimination. *Caravantes v. 53rd St. Partners, LLC*, 09 CIV. 7821 RPP, 2012 WL 3631276, at *17 (S.D.N.Y. Aug. 23, 2012) (holding that game played by male employees which involved sexual touching and gestures was male-on-male horseplay and not actionable under the NYSHRL or NYCHRL); *see also Peone v. Cnty. of Ontario*, 12-CV-6012 CJS, 2013 WL 775358, at *6 (W.D.N.Y. Feb. 28, 2013) (male-on-male horseplay which involved supervisor wrestling subordinate to the ground and grinding his pelvis against his leg could not be considered "because of sex" based on the circumstances).

Even if the alleged conduct occurred because of Plaintiff's gender, it was not sufficiently severe or pervasive to constitute a hostile work environment. As explained above (p. 8-10), the

14

hostile work environment standard is stringent and requires a repeated course of abusive conduct. Viewing the evidence in the light most favorable to Plaintiff, the totality of the conduct amounted to Rosenberg touching Plaintiff's buttocks on 2-3 occasions; sticking his tongue out at him/trying to lick him on 3 occasions, trying to nibble his ear on 1 occasion, and drawing penises on his paycheck on 3-6 occasions. Rosas Tr. at 40-41, 84, 120. Such discrete, isolated incidents do not amount to a hostile work environment. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (finding lack of sufficient evidence where defendant told plaintiff that "she had been voted the 'sleekest a**' in the office" and had "deliberately touched [her] breasts"); *Guangyu Zhao v. Time, Inc.*, No. 08 Civ. 8872(PAC)(MHD), 2010 WL 3377498, *23 (S.D.N.Y. August 24, 2010) (holding that plaintiff must show that he was subjected to conduct that was "egregious," "hostile," or "abusive"); *Osoriio v. Source Enters.*, 05 Civ. 10029 (JSR), 2006 WL 2548425, at *5 (S.D.N.Y. Sept. 5, 2006) (showing pornographic movie was not enough to create hostile work environment); *Feliciano v. Alpha Sector*, No. 00 Civ. 9309, 2002 WL 1492139, at *9 (S.D.N.Y. July 11, 2002) (finding that an attempt to hug, requests to date, statement of desire to "lay with" plaintiff, and kiss did not give rise to hostile work environment); *Arroyo v. WestLB Admin., Inc.*, 54 F. Supp. 2d 224, 230-31 (S.D.N.Y. 1999) (finding six incidents spanning two-year period insufficient to show hostile work environment); *cf. Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) (finding triable issues of fact where plaintiff was subjected to daily sex-based remarks, disproportionate work assignments, workplace sabotage, and physical threats for over two years).

Once again, the conduct must be viewed in the context in which it occurred. When viewed in the appropriate social context, *see Oncale*, 523 U.S. at 81, the conduct (assuming it occurred) was simply male-on-male horseplay. *Caravantes*, 2012 WL 3631276, at *16-17 (holding that game played by male employees which involved sexual touching and gestures was male-on-male

15

horseplay and not sufficiently severe or pervasive under NYSHRL or NYCHRL) (citing *Jones v. Potter,* 301 F. Supp.2d 1, 11–12 (D.D.C. 2004) (male supervisor's alleged harassing conduct towards employee, which consisted of rubbing his penis against employees buttocks on one occasion in front of co-workers did not meet the severe or pervasive standard)). While perhaps "boorish and juvenile," the conduct cannot objectively be considered "hostile." *Id.*

### 2.   Plaintiff's Description of the Sexual Harassment is Not Credible

When evidence is so contradictory and fanciful that it cannot be believed by a reasonable person, it may be disregarded. *Aziz Zarif Shabazz v. Pico,* 994 F. Supp. 460, 470 (S.D.N.Y.1998), *aff'd,* 205 F.3d 1324 (2d Cir. 2000); *see Jeffreys v. City of New York*, 426 F3d 549, 555 (2d Cir. 2005) (affirming grant of summary judgment where there was nothing in the record to support plaintiff's allegations other than his own contradictory testimony);

Plaintiff's testimony regarding the penis drawings was so rife with contradictions and inconsistencies that a reasonable person could not believe it. First, Plaintiff alleged in the Amended Complaint that the drawings occurred "almost on a weekly basis." Am. Compl. ¶ 18. In his deposition, however, despite reading this allegation and testifying to its accuracy numerous times, *see* Rosas Tr. at 62, Plaintiff testified that this actually only occurred 3-6 times during the entire course of his employment, *id.* at 84.  Plaintiff could not explain this contradiction despite being given the opportunity to do so. *Id.* at 86-87.

Plaintiff has also repeatedly changed the location of the drawing. The Amended Complaint states that the picture was drawn on the "back of Plaintiff's pay check." *Id.* ¶ 18. During discovery, Defendants' counsel inquired as to whether the drawing was on the paycheck portion deposited at the bank (and therefore available to be subpoenaed) or on the paystub portion. *See* Sofio Decl., Ex. Z ¶ 5. Plaintiff's counsel claimed that it was on the paystub portion

16

of the check. *Id*. However, none of the paystubs produced in discovery contained any drawings. *See* Defs.' 56.1 ¶ 22. In Plaintiff's deposition, he changed his claim yet again and testified that the drawings were actually made on the check envelope. Rosas Tr. at 60. Plaintiff could not explain this discrepancy despite being given numerous opportunities to do so. Rosas Tr. at 68-70, 96-97.

Plaintiff also testified that he never saw Rosenberg draw on his checks. Rosas Tr. at 100-101.  His only basis for claiming that Rosenberg made the drawings was that it was "always" Barry Rosenberg who handed out the checks. However, he also testified that both Anthony Castriello and Barry Rosenberg handed out the checks. Rosas Tr. at 33. All of the other drivers who were asked stated that it was Anthony Castriello who typically handed out the checks on a weekly basis, not Barry Rosenberg. Pardo Tr. at 47-48; Mungo Tr. at 51; Rivera Tr. at 27-28; DiBiasi Tr. at 11; Rosenberg Aff. ¶ 10.

Finally, Plaintiff initially testified that he originally interpreted the drawings as a joke, *see* Rosas Tr. at 101, but then later said it wasn't a joke, *id.* at 102-103. When asked to explain the discrepancy between this testimony and the allegation in the Amended Complaint reflecting that the drawings were a joke, Plaintiff's only response was: "I didn't draft this. I didn't draft this." *Id*. at 103 (referring to the Amended Complaint). When asked to explain the discrepancy between his testimony that he thought it was a joke and his later testimony that it wasn't a joke, Plaintiff's only response was that he "misspoke." *Id*. at 104.

The buttocks grabbing allegation is similarly not credible. Plaintiff claims that Rosenberg also attempted to grab Willy Rivera's buttocks. *See* Rosas Tr. at 111.[7] Rivera was emphatic that this did not occur:

---

[7]        Q. Did you ever observe Barry grabbing anyone else's buttocks?

17

> Q.      Did you ever witness Barry Rosenberg touch Raymond Rosas's butt?
> A.      No.
> Q.      Never witnessed that. Did Barry Rosenberg ever touch your butt?
> A.      What, he would touch my butt?
> Q.      Yes.
> A.      He wouldn't dare. He was crazy, but not stupid.

Rivera Tr. at 19.

Similarly, Rosas testified that Rivera saw Rosenberg try to lick him on both occasions.

Rosas Tr. at 42. However, Rivera was also emphatic that this did not occur:

> Q.      Did you ever witness Barry Rosenberg attempt to lick Raymond Rosas?
> A.      Repeat that question, please.
> Q.      Did you ever witness Barry Rosenberg attempt to lick Raymond Rosas?
> A.      Did you say lick?
> MR. KOCIAN: Lick.
> Q.      On the face?
> A.      No, no.

Rivera Tr. at 21. Rivera is represented by Plaintiff's counsel in another proceeding against Balter

Sales. McGuire Aff. ¶ 5. Thus, he has no reason to exhibit bias toward Defendants in this case.

### 3.  Plaintiff Cannot Impute Rosenberg's Conduct to Balter Sales Since Rosenberg Was Not His Supervisor and He Never Complained to a Supervisor

"An employer cannot be held liable [under the NYSHRL] for an employee's discriminatory

act unless the employer became a party to it by encouraging, condoning, or approving it." *Forrest*

*v. Jewish Guild for the Blind*, N.Y.3d 295, 311 (2004); *accord Totem Taxi, Inc. v. New York State*

*Human Rights Appeal Board*, 65 N.Y.2d 300, 304 (1985). Similarly, the NYCHRL "imposes

liability on the employer in three instances: (1) where the offending employee exercised

managerial or supervisory responsibility . . .; (2) where the employer knew of the offending

---

A. Yes.
Q. Who?
A. It was once Willy, Willy Rivera.

employee's unlawful discriminatory conduct and acquiesced in it or failed to take immediate and appropriate corrective action; and (3) where the employer should have known of the offending employee's unlawful discriminatory conduct yet failed to exercise reasonable diligence to prevent [it]"). *Zakrzewska v. New School*, 14 N.Y.3d 469, 479 (2010) (*quoting* Administrative Code of City of NY § 8-107 (13)(b)(1)-(3)).

The factors a court may consider in determining whether an employee is a supervisor include "whether the individual (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or employment conditions, (3) determined the rate and methods of payment, and (4) maintained employment records." *Maher v. Alliance Mortg. Banking Corp.*, 650 F. Supp. 2d 249, 260 (E.D.N.Y. 2009) (quotations omitted); *See Ballard v. Children's Aid Soc'y.*, 781 F. Supp. 2d 198, 211 (S.D.N.Y. 2011); *Mitra v. State Bank of India*, No. 03 Civ. 6331, 2005 WL 2143144, at *3 (S.D.N.Y. Sept. 6, 2005); *Priore v. New York Yankees*, 307 A.D. 2d 67, 74 (1st Dep't 2003). Barry Rosenberg did not have the power to hire and fire employees, supervise or control employee work schedules or employment conditions, determine rate and methods of payment, and/or maintain employment records. *See* Defs.' 56.1 ¶ 45. Even Plaintiff himself conceded that Rosenberg did not have the authority to fire him or promote him. *See* Rosas Tr. at 32.

As to whether Balter Sales knew about the acts, Plaintiff testified that the only time he complained about sexual harassment to management was on December 7, 2011. *See* Rosas Tr. at 90-91. He further testified that the only type of sexual harassment he complained about was the penis drawings. *Id*. Plaintiff stated that after he complained, the drawings stopped. *Id*. at 92. Thus, since Plaintiff cannot demonstrate that Rosenberg was a supervisor or that Balter Sales

management knew or should have known about the harassment and acquiesced to it, the sexual harassment claims must be dismissed as against Balter Sales. *See Zakrzewska*, 14 N.Y.3d at 479.

The sexual harassment claims should also be dismissed as against Defendants Arnold and Marc Balter as there are no allegations (or evidence) that they committed any acts of harassment. *See* Am. Compl.; *Schanfield v. Sojitz Corp. of Am.,* 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (proof of participation in discriminatory conduct necessary to impose individual liability).

### 2.  Retaliation (Third and Seventh Causes of Action)

Plaintiff claims that Defendant retaliated against him by (1) terminating his employment, (2) filing a police report, and (3) filing a counterclaim in this action. *See* Am. Compl. ¶ 69. Plaintiff's NYSHRL and NYCHRL retaliation claims are analyzed using the three-step burden-shifting framework established in *McDonnell Douglas*. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996); *Sharpe v. MCI Commc'ns Servs., Inc.*, 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 316 (2004) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). To establish a *prima facie* case for retaliation, Plaintiff must show: (1) he engaged in protected activity, (2) Defendants were aware of his protected activity, (3) he was subjected to a material adverse employment action, and (4) a causal connection exists between the protected activity and the adverse action. *See Sharpe*, 684 F. Supp. 2d at 406; *Forrest*, 3 N.Y.3d at 313. If Plaintiff meets this burden, Defendants must articulate a legitimate, non-retaliatory reason for the adverse action, which Plaintiff may defeat only by showing that the proffered reason is a pretext for unlawful retaliation. *Id*. at 316-17.

### a.  Retaliatory Termination

First, it appears that Plaintiff has abandoned his retaliatory termination claim as he testified in his deposition that Balter Sales only retaliated against him in two ways: getting him arrested

and making him sit for a deposition. *See* Rosas Tr. at 244-45.[8] He also testified that retaliation was

not one of the reasons he was terminated. *Id*. at 245-46.[9]

       In any event, according to Plaintiff's own testimony, he was not terminated in retaliation

for engaging in protected activity. The Amended Complaint alleges that Plaintiff was terminated

"because he opposed Defendants' unlawful behavior." Am. Compl. ¶ 36. During his deposition,

Plaintiff explained that the reference to "unlawful behavior" was a reference to Plaintiff's

---

[8]     Q:     In this case you are claiming that defendants retaliated against you for engaging in protected activity. Please tell me all the ways that you believe defendants retaliated against you. [Objection]
    A:     What do you mean by all the ways?
    Q:     List any way you feel that you've been retaliated against. Do you know what I mean by retaliated?
    A:     Yes. Getting me arrested for something I didn't do.
    Q:     Anything else?
    A:     I'm sitting here today.
    Q:     What do you mean by that?
    A:     That's part of their retaliation.
    Q:     Your deposition today you feel is part of the retaliation?
    A:     Yes.
    Q:     Okay. Anything else?
    A:     That's it.

[9]     Q:     What do you think the reasons were?
    A:     It was retaliation.
    Q:     For what?
    A:     For basically saying I didn't do anything.
    Q:     Did you have any other – did you feel you were terminated for any other reasons?
    A:     Yes.
    Q:     What are those?
    A:     Pretty much my race.
    Q:     What do you mean by pretty much your race?
    A:     My race.
    Q:     Okay. Any other reasons?
    A:     Speaking up for myself.
    Q:     Speaking up for yourself about what?
    A:     Driving unsafe vehicles that they have.
    Q:     Any other reasons?
    A:     No.

complaint to Mark Balter about truck safety issues. Rosas Tr. at 247. Plaintiff was adamant that
the truck safety issues was the only unlawful behavior he was referring to:

> Q:      ...Paragraph 36 refers to defendants' unlawful behavior. Is
>          that the safety conditions you spoke of earlier.
> A:      Yes.
> Q:      Does it refer to anything else?
> A:      It was the safety of the vehicles and that's it.

*Id*. at 248. Complaints about issues other than unlawful discrimination cannot form the basis of a
retaliation claim under the New York employment laws. *See Douglass v. Rochester City Sch. Dist.*,
522 Fed App'x 5, 8 (2d Cir. 2013) (applying NYSHRL and holding that complaint must put a
reasonable employer on notice that employee was opposing conduct prohibited by anti-
discrimination laws); *Sharpe*, 684 F. Supp. 2d at 406 ("The onus is on the speaker to clarify to the
employer that he is complaining of unfair treatment due to his membership in a protected class and
that he is not complaining merely of unfair treatment generally."); *see also Cordoba v. Beau Deitl
& Assocs.*, No 02 Civ. 4951(MBM), 2003 WL 22902266, at *9 (S.D.N.Y. Dec. 2, 2003)
(dismissing retaliation claim where "complaints did not pertain to age discrimination – the
particular offense against which the ADEA is directed – and thus do not constitute 'protected
activity' within the meaning of the statute."); *Velasquez v. Goldwater Mem'l Hosp.*, 88 F. Supp.
2d 257, 264 (S.D.N.Y. 2000). Thus, Plaintiff's complaint about "unlawful behavior" cannot form
the basis of his retaliation claim since the complaint had nothing to do with the anti-discrimination
laws.

        Plaintiff also alleges in the Amended Complaint that he informed Defendant Marc Balter
that he would be obtaining an attorney to pursue a harassment and discrimination claim against
him on January 3, 2012, the day he was fired. *Id*. ¶ 37. However, this allegation is inconsistent
with Plaintiff's recounting of the events of the day he was fired during his deposition. *See* Rosas

Tr. at 185-91. Indeed, Plaintiff admitted that he did not engage an attorney until two weeks after he was terminated. *Id*. at 192. It is undisputed that Plaintiff's attorney did not contact Defendants until January 13, 2012, *after* Plaintiff's termination. Defs.' 56.1 ¶ 48. Thus, it is impossible for Balter Sales to have terminated Plaintiff as a result of him hiring an attorney.[10] *Iannone v. ING Fin. Servs., LLC*, 49 A.D.3d 391, 392 (1st Dep't 2008); *Singh v. State Off. of Real Prop.*, 40 A.D.3d 1354, 1357 (3d Dep't 2007). Based on the foregoing, Plaintiff cannot demonstrate that he engaged in any protected activity prior to his termination and, therefore, he cannot make out a *prima facie* case for retaliatory termination.

In any event, even if Plaintiff could make out a *prima facie* case for retaliatory termination, Defendant has demonstrated that it had a legitimate, non-retaliatory reason for firing Plaintiff, i.e., stealing merchandise. *See* p. 4-7*, supra*. Thus, it is Plaintiff's burden to demonstrate that the accusation of theft stealing was merely a pretext for retaliation. There is no evidence that this is the case.

### b.  Filing the Police Report

First, Plaintiff's claim must fail as a matter of law because of Marc Balter's filing of a police report after Plaintiff was terminated is not an adverse employment action, but rather a legitimate attempt to protect his company's rights.[11] *See* Def's. 56.1 ¶ 46. Preventing individuals

---

[10]     In response to Defendants' Rule 11 request that Plaintiff withdraw this claim, Plaintiff's counsel took the absurd position that even though they did not contact Defendants until January 13, 2012 and file this lawsuit until August 27, 2012, Plaintiff's January 3, 2012 termination was "in retaliation for retaining an attorney and initiating a lawsuit." *See* Sofio Aff., Ex. B. This position ignores basic causation and logic principles as Defendants could not retaliate against Plaintiff for actions that had not yet occurred. Given the utterly frivolous nature of this argument, Defendant intends to file a motion for sanctions.

[11]     Federal case law is persuasive on this issue. *See Aviles v. Cornell Forge Co.*, 241 F.3d 589, 593 (7th Cir. 2001) ("If an employer had to face Title VII liability for truthfully reporting to the police that a disgruntled employee had threatened a supervisor and could be armed, we might

or businesses from reporting crime was certainly not one of the goals of New York's antidiscrimination laws. Notably, it was the New York Police Department – not Marc Balter -- who determined that there was probable cause to arrest Plaintiff and the New York District Attorney's Office – not Marc Balter – that ascertained that there was probable cause to charge Plaintiff. *Id*. ¶¶ 49-50. Defendants cannot be held responsible for these agency's carrying out their duties.

Even if the police report constituted an adverse employment action, Plaintiff cannot demonstrate a causal connection between the report and his engaging in protected activity. Defendant was not aware that Plaintiff had retained a lawyer and was asserting discrimination claims until at least January 13, 2012. *See* Defs.' 56.1 ¶ 48. The police report, however, was filed on January 4, 2012. *See id.* ¶ 46. In any event, Marc Balter had a legitimate reason for filing the police report that was unrelated to Plaintiff's alleged engagement in protected activity – he believed that Plaintiff stole merchandise from Balter Sales. *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d 107, 129, 946 N.Y.S.2d 27, 42 (2012).

Finally, in the post-employment context, "where a plaintiff has not established that the allegedly-retaliatory action hurt his or her job prospects, those actions have not been held retaliatory and claims premised on such acts have been dismissed." *Thompson v. Morris Heights Health Ctr.*, 09 CIV. 7239 PAE THK, 2012 WL 1145964, at *7 (S.D.N.Y. Apr. 6, 2012). Here, the police report was not filed until after Plaintiff was terminated, thus it was in the post-employment context. *See* Defs.' 56.1 ¶¶ 26-28, 46. There can be no dispute that Plaintiff's job prospects have not been harmed – he is currently making more money than he did at Balter Sales.

---

discourage employers from taking the most prudent action to protect themselves and others in the workplace.")

24

*See id.* ¶ 51. Moreover, given Plaintiff's history of trouble with the law, no jury could conclude

that any harm to his job prospects was caused by this police report. *See id.* ¶¶ 54-55.

### c.   Retaliatory Counterclaim

Plaintiff's retaliation claim based on Balter Sales's filing of a counterclaim also fails as a

matter of law. First, courts have expressed significant First Amendment Rights concerns about

punishing a party for asserting its legal rights in a lawsuit. *See Marchiano v. Berlamino*, 10 CIV.

7819 LBS, 2012 WL 4215767, at *5 (S.D.N.Y. Sept. 20, 2012) (*Bill Johnson's Restaurants, Inc.

v. NLRB*, 461 U.S. 731, 740–41 (1983)). Assuming that the relief Plaintiff seeks is constitutional,

the retaliation claim can only survive if Plaintiff can demonstrate that it is baseless or lacks a

reasonable basis in fact or law. *See Brown v. Mustang Sally's Spirits & Grill, Inc.*, 12-CV-529S,

2012 WL 4764585, at *4 (W.D.N.Y. Oct. 5, 2012). This is particularly true where the counterclaim

is compulsory because the defendant would forever lose the right to assert if it is not asserted in

the plaintiff's action. *See Torres,* 628 F. Supp. 2d at 474; *Eng–Hatcher v. Sprint Nextel Corp.,* No.

07–CV–7350, 2008 WL 4865194 (S.D.N.Y. Oct. 31, 2008); *Orr v. James D. Julia, Inc.,* Civ. No.

07–51–B–W, 2008 WL 2605569, at *17 (D.Me. June 27, 2008); *Ergo v. International Merchant

Servs., Inc.,* 519 F.Supp.2d 765, 781 (N.D.Ill. 2007). For example, in *O'Connor v. Smith &

Laquercia, LLP,* the court analyzed whether a defendant's counterclaim was retaliatory under the

NYCHRL. 08-CV-4559 ENV MDG, 2010 WL 3614898, at *8 (E.D.N.Y. Sept. 9, 2010). The court

explained that:

> [d]efendants would likely not have sued [the plaintiff] had she not
> brought the original lawsuit against them. But, [the plaintinff] did
> commence an action and defendants did have a potential claim,
> which, while perhaps not strong enough to justify the costs of an
> independent lawsuit, could be practically justified as a counterclaim
> in the context of this suit.

*Id.* Accordingly, the court dismissed the retaliation claim.

Here, Balter Sales's conversion counterclaim is compulsory because it arises out of the "transaction or occurrence that is the subject matter of the opposing party's claim." The counterclaim is based on the same theft that resulted in Plaintiff's termination that is the subject of many of his claims. *See* Fed.R.Civ.P 13(a)(1)(A). Moreover, there can be no dispute that the counterclaim was not baseless -- Balter Sales has significant evidence that Plaintiff stole glasses on multiple occasions during the last week of 2011. *See* p. 4-7 *supra*.

An additional reason the retaliation claim based on the counterclaim should be dismissed is the lack of a causal connection between Defendant Balter Sales's decision to file a counterclaim in this action and Plaintiff's alleged protected activity. Defendant asserted the counterclaim on January 3, 2013, *see* Dkt. No. 10, almost a year after Plaintiff hired an attorney. *See* Defs.' 56.1 ¶ 48. Courts in this circuit hold that a passage of time greater than two months destroys any inference of a causal connection between the alleged protected activity and the allegedly retaliatory action. *Thompson v. Morris Heights Health Ctr.*, 09-7239, 2012 WL 1145964, at *10 (S.D.N.Y. Apr. 6, 2012) (collecting cases). Moreover, the reason for the filing was because, due to a procedural error on the part of the New York District Attorney, the District Attorney was no longer able to pursue the criminal case against Plaintiff. *See* Defs.' 56.1 ¶ 52. Thus, a claim in a civil suit was Balter Sales's only chance of recovering the value of its stolen merchandise. *Id*.

*     *     *

For the foregoing reasons, all of Plaintiff's retaliation claims should be dismissed.

### 3.      Interference With Protected Rights (Fifth Cause of Action)

Plaintiff asserts a vague claim for "interference with protected rights" under NYCHRL § 8-107(19). Am Compl. ¶¶ 73-74. Because there are no allegations or evidence that Defendants

engaged in conduct prohibited by this statute, i.e., coercing, intimidating, or threatening an employee on account of their exercise of rights under the NYCHRL, the claim must be dismissed. *Gallo v. Alitalia-Linee Aeree Italiane-Societa per Azioni*, 585 F. Supp. 2d 520, 548 (S.D.N.Y. 2008).

### 4.   Aiding and Abetting (Eighth Cause of Action)

Plaintiff also asserts a vague claim for "aiding and abetting" under the NYSHRL against all Defendants. *See* Am. Compl. ¶¶ 83-85. To be liable for aiding and abetting under the NYSHRL, Plaintiff must demonstrate that "the defendant *actually* participated in the conduct giving rise to the claim of discrimination." *Conde v. Sisley Cosmetics USA, Inc.*, 11 CIV. 4010 RJS, 2012 WL 1883508, at *6 (S.D.N.Y. May 23, 2012); *Fried v. LVI Servs., Inc.,* No. 10 Civ. 9308(JSR), 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011); *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009). The hallmarks of aiding and abetting liability are "community of purpose"; accordingly, a defendant must exhibit "direct, purposeful participation." *Conde*, 2012 WL 1883508, at *6.

The claim should be dismissed because Plaintiff does not articulate which of the individual defendants aided or abetted any particular act. *See Anand v. New York State Dep't of Taxation & Fin.*, 10-CV-5142 SJF WDW, 2012 WL 2357720, at *10 (E.D.N.Y. June 18, 2012); *Robles v. Goddard Riverside Cmty. Ctr.*, 08 CIV 4856, 2009 WL 1704627, at *3 (S.D.N.Y. June 17, 2009). Moreover, there are no allegations, let alone evidence, of a "community of purpose." Finally, because plaintiff has failed to raise a triable issue of material fact that any of the Defendants violated the NYSHRL anti-discrimination law, *see* p. 11-19 *supra*, they cannot be held liable for an aiding and abetting violation of that law. *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 314, 819 N.E.2d 998 (2004)

5.       **Assault and Battery (Ninth Cause of Action)**

Plaintiff claims that "Defendants, their agents, servants and/or employees, suddenly and without provocation did physically assault and batter Plaintiff." Am. Compl. ¶ 87. There is no dispute that none of the Defendants physically assaulted Plaintiff. Indeed, Plaintiff testified that the only physical harm he suffered with respect to the allegations in the Amended Complaint is the police putting handcuffs on him too tight. *See* Defs.' 56.1 ¶ 56. Defendants are not responsible for this activity.

Assuming that the "physical[] assault" Plaintiff is referring to is Rosenberg's alleged grabbing of his buttocks, the claim should also be dismissed. The statute of limitations for an assault and battery claim is one year. *See* C.P.L.R. § 215(3); *Acosta v. Loews Corp.*, 276 A.D.2d 214, 217 (1st Dept. 2000). In Plaintiff's deposition, he testified that Mr. Rosenberg attempted to hug Plaintiff, but grabbed Plaintiff's buttocks two or three times. Rosas Tr. at 107. Plaintiff further testified that the only incident that he did recall occurred in or around December 2010. *Id.* Since the Complaint was not filed until August 27, 2012, the one year statute of limitations had run.

6.       **State Law Claims Against Defendant Arnold Balter**

In addition to the reasons set forth above, all claims against Defendant Arnold Balter should be dismissed because there is absolutely no basis for imposing liability on this individual. Arnold Balter is retired from Balter Sales and was not involved in active management of the company during the time period that Rosas was employed. Defs.' 56.1 ¶ 57. Moreover, there are no allegations that Arnold Balter participated in or conducted any of the alleged discrimination or retaliation. *See* Am. Compl. Accordingly, all claims against him must be dismissed.

*Schanfield v. Sojitz Corp. of Am.,* 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (proof of

participation in discriminatory conduct necessary to impose individual liability).

**IV.     Conclusion**

      Based on the foregoing, Defendants respectfully request that all of Plaintiff's claims be

dismissed with prejudice.

 Dated: March 20, 2014

                                        HOLLYER BRADY LLP

                                        */s/* Lisa M. Sofio_____
                                        Lisa M. Sofio
                                        Michael McGuire, Esq.
                                        60 East 42nd Street, Suite 1825
                                        New York, NY 10165
                                        Phone: (212) 661-1903

                                        *Counsel for Defendants*