UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

RAYMOND ROSAS,                                              Case No.: 12 CV 6557-VB-HBP

                           Plaintiff,

            -against-

BALTER SALES CO. INC., ARNOLD BALTER,
individually, MARK BALTER, individually, and BARRY
ROSENBERG, individually,

                           Defendants.

----------------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 1

ARGUMENTS .......................................................................................................... 4

   I.   THE LEGAL STANDARD ......................................................................... 4

   II.   THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING PLAINTIFF'S 1981 CLAIM ........................................................................ 5

     a.   Plaintiff Has Established a Prima Facie Case of Race Discrimination Under §1981, The New York State Human Rights Law ("NYSHRL") and The New York City Human Rights Law ("NYCHRL") .......................................................................... 5

     b.   Plaintiff Has Established a Hostile Work Environment Claim Under §1981, The NYSHRL and The NYCHRL ...................................................................... 7

   III.   THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING PLAINTIF'S SEXUAL HARASSMENT CLAIM ...................................... 111

     a.   Plaintiff Has Established a Prima Facie Case of Sexual Harassment Under The NYSHRL and The NYCHRL .................................................................. 11

     b.   Plaintiff Was Subjected to a Sexually Hostile Work Environment ..................... 12

     c.   Defendant Balter Sales Was Aware of the Sexually Hostile Work Environment But Failed to Take Corrective Action ....................................................... 14

   IV.   PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE OF RETALIATION UNDER 42 U.S.C. § 1981, THE NYSHRL AND THE NYCHRL .................................. 155

     i.   Plaintiff has established a causal connection between the protected activity and the adverse action ......................................................................................... 188

     ii.   Defendants' Proffered Non-Discriminatory Reasons for their Adverse Employment Actions are Pretext ............................................................... 20

   V.   OTHER ISSUES THAT PRECLUDE SUMMARY JUDGMENT ........................... 23

     a.   Arnold Balter is Liable for All State Law Claims ....................................... 23

     b.   Defendants Interfered with Plaintiff's Protected Rights ............................... 23

     c.   Assault and Battery ............................................................................ 24

     d.   Aiding and Abetting Claim .................................................................. 255

   VI.   CONCLUSION .................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986)............................................................................................ 4

*Back v. Hastings on Hudson Union Free Sch. Dist.,*
365 F.3d 107 (2d Cir. 2004)............................................................................. 20

*Barbosa v. Continuum Health Partners, Inc.,*
716 F. Supp. 2d 210 (S.D.N.Y. 2010)............................................................. 6

*Beatie v. City of New York,*
123 F.3d 707 (2d Cir. 1997)............................................................................. 5

*Bhaduri v. Summit Sec. Servs.,* Case No. 05 Civ. 7024 (HB)
2006 U.S. Dist. LEXIS 79830 (S.D.N.Y. 2006)............................................. 5

*Blanco v. Brogan*,
620 F. Supp. 2d 546 (S.D.N.Y. 2009)............................................................. 5

*Bogdan v. N.Y. City Transit Auth.,* No. 02 Civ 09587 (GEL),
2005 WL 1161812 (S.D.N.Y. May 17, 2005) ............................................... 20

*Burns v. McGregor Electronic Industries, Inc.,*
955 F.2d 559 (8th Cir. 1992) ......................................................................... 10

*Cajamarca v. Regal Entm't Grp.,*
863 F. Supp. 2d 237 (E.D.N.Y. 2012) ................................................. 10, 14, 25

*Carlton v. Mystic Transp., Inc.,*
202 F.3d 129 (2d Cir. 2000).............................................................................. 20

*CBOCS West, Inc. v. Humphries*,
553 U.S. 442 (2008)............................................................................................ 15

*Chambers v. TRM Copy Ctrs. Corp.,*
43 F.3d 29 (2d Cir. N.Y. 1994)......................................................................... 7

*Chukwueze v. NYCERS* (N.Y. City Emples. Ret. Sys.),
891 F. Supp. 2d 443 (S.D.N.Y. 2012).............................................................. 8

*Collins v. New York City Transit Auth.*,
305 F.3d 113 (2d Cir. 2002).............................................................. 6

*Coregis Ins. Co. v. Baratta & Fenerty, Ltd.*,
264 F.3d 302 (3rd Cir. 2001) .............................................................. 4

*Doe v. R.R. Donnelley & Sons Co.*,
42 F.3d 439 (7th Cir. 1994) .............................................................. 8

*Feingold v. New* York,
366 F.3d 138 (2d Cir. N.Y. 2004).............................................................. 25

*Gallo v. Prudential Residential Servs.*,
22 F.3d 1219 (2d Cir. 1994).............................................................. 5

*Gladwin v. Pozzi*, No. 06 Civ. 0650 (SCR) (JFK),
2010 WL 245575 (S.D.N.Y. Jan. 22, 2010) .............................................................. 20

*Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*,
252 F.3d 545 (2d Cir. 2001).............................................................. 18

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993).............................................................. 8, 12

*Hayes v. New York City Dept. of Corr.*,
84 F.3d 614 (2d Cir. 1996).............................................................. 5

*Hearth v. Metropolitan Transit Commission*,
436 F. Supp. 635 (D. Minn. 1977).............................................................. 16

*Hicks v. Baines*,
593 F.3d 159 (2d Cir. 2010).............................................................. 18

*Holtz v. Rockefeller & Co.*,
258 F.3d 62 (2d Cir. 2001).............................................................. 15

*Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*,
470 F. Supp. 2d 345 (S.D.N.Y. 2007) ............................................................................ 25

*Jute v. Hamilton Sundstrand Corp.*,
420 F.3d 166 (2d Cir. 2005) ......................................................................................... 18

*Manoharan v. Columbia College of Physicians & Surgeons*,
842 F.2d 590 (2d Cir. 1988) ......................................................................................... 16

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) .................................................................................................. 5, 6

*Oncale v. Sundowner Offshore Servs., Inc.*,
523 U.S. 75 (1998) ....................................................................................................... 13

*Patrick v. LeFevre*,
745 F.2d 153 (2d Cir. 1984) ........................................................................................... 5

*Perks v. Town of Huntington*,
251 F. Supp. 2d 1143 (E.D.N.Y. 2003) ........................................................................ 25

*Pozo v. J & J Hotel Co., L.L.C.*, No. 06 Civ 2004 (RCC) (AJP),
2007 WL 1376403 (S.D.N.Y. May 10, 2007) ................................................................. 9

*Reid v. Ingerman Smith LLP*,
876 F. Supp. 2d 176 (E.D.N.Y. 2012) .......................................................................... 13

*Ruhling v. Tribune Co.*, Case No. 04-2340 (ARL)
2007 WL 28283 (E.D.N.Y. Jan. 3, 2007) ..................................................................... 18

*Ruiz v. Cnty. Of Rockland*,
609 F. 3d 486 (2d Cir. 2010) .......................................................................................... 5

*Schanfield v. Sojitz Corp. of Am.*,
663 F. Supp. 2d 305 (S.D.N.Y. 2009) .......................................................................... 25

*Schwapp v. Town of Avon*,
118 F.3d 106 (2d Cir. 1997) ........................................................................................... 9

*Shelton v. Trs. of Columbia Univ.*,

369 Fed. App'x. 200 (2d Cir. 2010)..................................................................................... 15

*Sicular v. N.Y.C. Dep't of Homeless Servs.*, No. 09-CV-0981,
2010 WL 423013 (S.D.N.Y. Feb. 4, 2010)........................................................................ 18

*Slattery v. Swiss Reinsurance America Corp.*,
248 F.3d 87 (2d Cir. 2001)................................................................................................... 6

*Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*,
798 F. Supp. 2d 443 (E.D.N.Y. 2011) ................................................................................. 8

*Snell v. Suffolk County*,
782 F.2d 1094 (2d Cir. 1986).............................................................................................. 10

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
606 F. Supp. 2d 427 (S.D.N.Y. 2009).................................................................................. 11

*Terry v. Ashcroft*,
336 F.3d 128 (2d Cir. 2003).................................................................................................. 6

*Texas Dept. of Comm. Affairs v. Burdine*,
450 U.S. 248 (1981)............................................................................................................ 20

*Torres v. Gristede's Operating Corp.*,
628 F. Supp. 2d 447 (S.D.N.Y. 2008)................................................................................. 17

*Torres v. Pisano*,
116 F.3d 625 (2d Cir. 1997)................................................................................................ 10

*University of Tex. Sw. Med. Ctr. v. Nassar*,
133 S. Ct. 2517 (2013)........................................................................................................ 18

*Van Zant v. KLM Royal Dutch Airlines*,
80 F.3d 708 (2d Cir. 1996)............................................................................................. 8, 12

*Wahlstrom v. Metro-N. Commuter R.R. Co.*,
89 F. Supp. 2d 506 (S.D.N.Y. 2000).................................................................................. 13

*Whidbee v. Garzarelli Food Specialities, Inc.*,
223 F.3d 62 (2d Cir. 2000).................................................................................................... 9

*Williams v. McCausland*, Case No. 90 Civ. 7563 (RW) (THK),
1995 WL 548862 (S.D.N.Y. Sept. 15, 1995)............................................................................. 7

*Winston v. Verizon Servs. Corp.*,
633 F. Supp. 2d 42 (S.D.N.Y. 2009)........................................................................................ 6

**STATE CASES**

*Farrugia v. North Shore Hospital*,
820 N.Y.S.2d 718 (2006)................................................................................................... 9, 14

*Gallegos v. Elite Model Mgmt. Corp.*,
28 A.D. 3d 50 (N.Y. App. Div. 1st Dep't 2005)..................................................................... 23

*Jordan v.  Bates Advertising Holdings, Inc.*,
816 N.Y.S.2d 310 (N.Y.Sup. 2006)........................................................................................ 10

*Kennington v. 226 Realty* LLC,
2013 NY Slip Op 32708(U)(N.Y. Sup. Ct. Oct. 24, 2013)....................................................... 23

*Montanez v. N.Y. City Hous. Auth.*,
5 A.D.3d 314 (N.Y. App. Div. 1st Dep't 2004)...................................................................... 24

*Patrowich v. Chemical Bank*,
63 N.Y.2d 541 (N.Y. 1984) .................................................................................................... 23

*Williams v New York City Hous. Auth.*,
872 N.Y.S.2d 27 (1st Dept. 2009) .................................................................................. 9, 10, 14

**STATUTES**

42 U.S.C. §1981............................................................................................................... passim

Fed. R. Civ. P. 56(c) ................................................................................................................. 4

NYCHRL ....................................................................................................................... passim

NYCHRL §8-107(19) ............................................................................................................ 23

NYCHRL §8-1079(13) .......................................................................................................... 23

NYSHRL.............................................................................................................................. passim

NYSHRL §296(1) ....................................................................................................................... 23

**INTRODUCTION**

The facts at issue here are simple; determining who to believe is not. In sum, Plaintiff, Raymond Rosas ("Plaintiff") contends that during the course of his employment with Defendant Balter Sales Co. Inc. ("Balter Sales"), he was racially discriminated against and sexually harassed. Defendants were aware of the racially hostile work environment, as well as the sexual harassment, and failed to investigate or remedy Plaintiff's complaints. Defendants then terminated Plaintiff because of his race, because he complained about the discrimination, and further retaliated against Plaintiff when Plaintiff filed this action in Court, by filing a cross-claim that Plaintiff stole merchandise, which Plaintiff adamantly denies, which is unsubstantiated by any real evidence, and which Defendants' own employees contradict. Defendants also claim that the discrimination and harassment never happened. There are so many triable issues of fact that summary judgment is simply not appropriate. Moreover, Defendants' entire motion is predicated on facts that are, at best, in dispute, as well as false assumptions that are not supported by the evidence. For the reasons discussed below, Defendants' motion for summary judgment should be denied in its entirety.

**STATEMENT OF FACTS**

In October 2010, Plaintiff began working for Defendant Balter Sales as a "Driver." (Pl. Aff. ¶2; Rosas Tr. 28:7-10[1]). Plaintiff was hired for the position of "Driver" because he had a Class A license and extensive training and experience handling and driving heavy equipment. (Rosas Tr. 138:6-8). As a Driver for Defendant Balter Sales, Plaintiff successfully performed his duties, making deliveries to approximately 28 different restaurants across Manhattan. During the

---

[1]    All of the deposition transcripts referred to herein are cited as "[deponent name] Tr. at [page number:line number]" and are being submitted to Your Honor on a CD in accordance with Your Honor's Individual Practice Rule 4.D.

course of Plaintiff's employment, he was supervised by Barry Rosenberg and Anthony Castriello, as well as two of Defendant Balter Sales' owners, Marc Balter and Lori Balter. (Pl. Aff. ¶3; Rosas Tr. 29:3-30:2; 31:19-32:7; Balter Tr. 8:5-6).

Plaintiff is a Hispanic male. (Pl. Aff. ¶1; Rosas Tr. 37:25-38:2). Shortly after Defendants hired Plaintiff, Plaintiff's supervisor (Defendant Marc Balter ("Balter")), began discriminating against Plaintiff on the basis of Plaintiff's race. (Pl. Aff. ¶5; Rosas Tr. 121:14-122:9; 129-134). Defendant Balter also has a history of violent behavior in the workplace. (Pardo Tr. 19:23-20:18; Mungo Tr. 13:17-14:3; Rivera Tr. 25:22-26:9; 71:23-72:3; 72:16-22; 73:20-24; 76:2-77:19). In fact, one of Defendant Balter's employees likened him to the Marvel comic book character "The Hulk." (Pardo Tr. 19:23-20:6). Defendant Balter also had a history of using racially charged language in the workplace, including the use of the term "nigger," when addressing his employees. (Mungo Tr. 23:4-11; Rivera Tr. 72:16-18).

Defendant Balter would, on a regular basis, make fun of Plaintiff, as well as Defendant Balter Sales' other Hispanic employees, by mocking their accents and speaking to them with a fake Spanish accent or fake broken English. (Pl. Aff. ¶5; Rosas Tr. 131:20; 132:7-133-3; Rivera Tr. 75:18-76:7). Plaintiff interacted with Defendant Rosas approximately three times per week, and on nearly every occasion, over the course of Plaintiff's employment, Defendant Balter spoke with a Spanish accent. (Pl. Aff ¶6; Rosas Tr. 132:7-9; Rivera Tr. 75:9-11; 75:18-76:7).

Plaintiff complained to Defendant Balter on more than one occasion, including in August of 2011, as well as on December 11 and December 27, 2011, about the racial harassment. (Pl. Aff. ¶¶7,12; Rosas Tr. 89:17-20). For example, in August of 2011, Plaintiff was frustrated with the demeaning tone with which Defendant Balter was addressing him and his similarly situated Hispanic co-workers and told Defendant Balter, **"You can't be talking to us like this.  It's**

**disrespectful.  It's offensive to me."** (Rosas Tr. 121:19-122:9; 133:7-134). Defendant Balter responded, further highlighting his contempt toward his minority employees, "What is it with *you* guys…*you must have a Latin attitude*."  Defendant Balter further inflamed the situation by adding, **"I can't believe the way things are going in the recession that you can tell me that you think I am talking offensive,"** insinuating that Plaintiff would have to endure his harassment or be terminated with little hope of finding a new job. (Rosas Tr. 121:19-122:9; 133:7-134). Plaintiff again complained to Defendant Balter in December 2011 and said, "Why are you always so offensive towards us? Why are you always so offensive towards me, the **Spanish guys,** and even the **Black guys?**" (Rosas Tr. 133:7-134).

Aside from the racial discrimination, Defendant Rosenberg drew penises on Plaintiff's paychecks. Defendant Rosenberg also touched Plaintiff's buttocks, tried to lick Plaintiff's face, tried to nibble on Plaintiff's ear, and stuck his tongue out at Plaintiff in a sexually suggestive manner. (Pl. Aff. ¶¶8-10; Rosas Tr. 41:9-16; Rivera Tr. 40:19-24; Mungo Tr. 19:3-17; 20:9-25; 43:23-25; 57:9-12; Freedman Decl. Ex. A).

In spite of Plaintiff's complaints regarding the racial and sexual harassment, the discriminatory treatment did not cease. Rather, less than four weeks later, Plaintiff was terminated for having complained about the discrimination, under the pretext that he stole property from Defendants. (Pl. Aff. ¶13; Rosas Tr. ¶188:14-191:14; Pardo Tr. 14:2-6). In fact, when Defendant Balter terminated Plaintiff, he brought Plaintiff into his office and demanded Plaintiff sign a **blank** union grievance form and offered no documentary evidence as to Plaintiff's alleged theft. (Pl. Aff. ¶¶14-15; Rosas Tr. 188:14-24; 190:25-191:14; 215; 222:19-25). Moreover, Defendants have a history of accusing their employees of stealing. (Mungo Tr. 6:18-13:3; Rivera Tr. 9:25-10:4).

3

Upon Plaintiff's termination, he told Defendant Balter that he intended to hire an attorney. (Pl. Aff. ¶16). Shortly thereafter, Plaintiff retained his current counsel. In retaliation for engaging an attorney, Defendants filed criminal charges against Plaintiff, claiming that Plaintiff stole several boxes of champagne flutes totaling $700.40. (Balter Tr. 36:21-37:25). However, the criminal charges against Plaintiff were dismissed on July 24, 2012. Defendants' employee verified that Plaintiff did not steal any property and that the missing merchandise was actually found by Defendants. (Pardo Tr. 13:14-14:17; Freedman Decl. Ex. I). Despite knowing that the missing merchandise was found, Defendants filed a counterclaim against Plaintiff for conversion which was really thinly veiled retaliation for Plaintiff having filed his original complaint.

## <u>ARGUMENTS</u>

### I.   **THE LEGAL STANDARD**

Under Fed. R. Civ. P. 56(c), summary judgment is warranted only when there are no genuine issues of material fact. A genuine issue of material fact exists if, based on the record as a whole, a reasonable trier of fact could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The burden to show that there are no genuine issues of fact rests with the party seeking summary judgment. *Anderson,* 477 U.S. at 256. A fact is "material" only if its existence or non-existence would affect the outcome of the suit under governing law. *Id.* at 249. In determining whether genuine issues of material fact exist, all inferences must be drawn, and all doubts must be resolved, in favor of the non-moving party. *Coregis Ins. Co. v. Baratta & Fenerty, Ltd*., 264 F.3d 302, 305-06 (3rd Cir. 2001) (citing *Anderson*, 477 U.S. at 248).

"When deciding a summary judgment motion, a trial court's function is not to weigh the evidence, make credibility determinations or resolve issues of fact, but rather to determine

whether, drawing all reasonable inferences from the evidence presented in favor of the nonmoving party, a fair-minded jury could find in the non-moving party's favor." *Beatie v. City of New York,* 123 F.3d 707, 710 (2d Cir. 1997). The weighing of evidence and the assessment of credibility are matters that lie exclusively within the province of the finder of fact, not the Court. *Hayes v. New York City Dept. of Corr.,* 84 F.3d 614, 619 (2d Cir. 1996).

"In employment discrimination cases where it is necessary to explore an employer's intent and motivation, summary judgment may not be appropriate." *Bhaduri v. Summit Sec. Servs.,* 2006 U.S. Dist. LEXIS 79830, at *11-12 (S.D.N.Y. 2006)(citing *Patrick v. LeFevre,* 745 F.2d 153, 159 (2d Cir. 1984). **"[A]n extra measure of caution is merited in affirming summary judgment in a discrimination action because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions."** *Blanco v. Brogan*, 620 F. Supp. 2d 546 (S.D.N.Y. 2009)(emphasis added) (*citing Gallo v. Prudential Residential Servs*., 22 F.3d 1219, 1224 (2d Cir. 1994)).

## II.   THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING PLAINTIFF'S 1981 CLAIM

### a.   Plaintiff Has Established a Prima Facie Case of Race Discrimination Under §1981, The New York State Human Rights Law ("NYSHRL") and The New York City Human Rights Law ("NYCHRL")

Employment discrimination claims brought under 42 U.S.C. §1981 are analyzed at the summary judgment stage under the burden shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See also Ruiz v. Cnty. Of Rockland*, 609 F. 3d 486, 491 (2d Cir. 2010).

To establish a prima facie case of discrimination under Section 1981, the NYSHRL and the NYCHRL, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) the adverse

action occurred under circumstances giving rise to an inference of discrimination.[2] *McDonnell Douglas*, 411 U.S. at 802. If plaintiff meets the minimal burden of establishing a prima facie case, the burden of production then shifts to defendants to offer a legitimate, non-discriminatory reason for the adverse employment action. *Id.* at 802-803. *See also Terry v. Ashcroft*, 336 F.3d 128 (2d Cir. 2003)(citing *Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002).

Plaintiff has sufficiently established a prima facie case under §1981, the NYSHRL and the NYCHRL. First, in this case, Plaintiff is a member of a protected class because he is Hispanic. Second, Plaintiff was qualified for his position as Driver. "To show qualification for a job, a plaintiff must only offer evidence that he or she has the 'basic skills necessary for performance of [the] job.'" *Winston v. Verizon Servs. Corp.*, 633 F. Supp. 2d 42, 49 (S.D.N.Y. 2009)(citing *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 92 (2d Cir. 2001).   The evidence shows that Plaintiff was qualified for his position as Driver. (Pl. Aff ¶2; Rosas Tr. 138:5-13).   With respect to the third prong, Plaintiff established that he suffered an adverse employment action when he was terminated. There is no dispute that Plaintiff's termination qualifies as an adverse employment action. (Defendants' Brief at pg. 3).

Finally, with respect to the fourth prong, Plaintiff has sufficiently established that his termination occurred under circumstances giving rise to an inference of discrimination. Plaintiff may "meet this burden by proffering evidence of 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees in the protected

---

[2]   "Employment discrimination claims brought under 42 U.S.C. §1981, the NYSHRL and the NYCHRL are generally analyzed under the same evidentiary framework that applies to Title VII." *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 217 (S.D.N.Y. 2010).

group.'" *Williams v. McCausland*, Case No. 90 Civ. 7563 (RW) (THK), 1995 WL 548862, \*13 (S.D.N.Y. Sept. 15, 1995)(citing *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. N.Y. 1994).

Testimony in this case is replete with examples of how Defendants treated minorities differently (less well) than similarly situated Caucasian employees. Plaintiff's former co-workers testified that Defendant Balter treated white employees differently than Hispanic and Black employees.  Specifically, Rivera testified, "you know what, he had his favorites, and his favorite was the white guys." (Rivera Tr. 79:8-15). Mark Mungo also testified that Defendant Balter treated white employees better than Black or Hispanic employees. (Mungo Tr. 67:7-11).

Plaintiff also testified that Defendant Balter "changed his way of speaking when he spoke to someone that was Latin. He just didn't talk his normal way, he would try to mimic the way Latins talk." (Rosas Tr. 123:17-21). Plaintiff also made clear that Defendant Balter was making fun of him and his Hispanic heritage by mimicking a Spanish accent. (Rosas Tr. 129:15-24). This was further confirmed by William Rivera. (Rivera Tr. 97:23-98:7). Moreover, this discriminatory behavior occurred nearly every time Defendant Balter spoke to Plaintiff. (Rosas Tr. 132:2-9; Rivera Tr. 95:12-96:2). Another of Plaintiff's former co-workers, Cam Pardo, a current employee of Defendant Balter Sales, testified that Defendant Balter called him a "stupid Columbian," further confirming Defendant Balter's contempt for his minority employees. (Pardo Tr. 24:21-25:2). Nevertheless, Defendants deny these facts. (Balter Tr. 11:14-16).

> **b. Plaintiff Has Established a Hostile Work Environment Claim Under §1981, The NYSHRL and The NYCHRL**

To prevail on a hostile work environment claim under §1981 and the NYSHRL,[3] a plaintiff must demonstrate:   "(1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996).   The conduct alleged must be severe or pervasive enough to create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993).  *See also*, *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 444 (7th Cir. 1994)("the conduct in question is to be judged by both an objective and a subjective standard.").

### i.  Plaintiff Was Subjected to a Hostile Work Environment

In determining whether an environment is hostile, the Court must consider the totality of the circumstances. *Harris*, 510 U.S. at 23. "Hostile work environment claims are evaluated by looking at all of the circumstances, which may include the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Chukwueze v. NYCERS* (N.Y. City Emples. Ret. Sys.), 891 F. Supp. 2d 443, 454 (S.D.N.Y. 2012)(quoting *Harris,* 510 U.S. at 23).

In this case, Plaintiff was repeatedly subjected to racial discrimination. Plaintiff himself testified that Defendant Balter "changed his way of speaking when he spoke to someone that was Latin. He just didn't talk his normal way, he would try to mimic the way Latins talk." (Rosas

---

[3]     The standards for evaluating hostile work environment claims under Title VII, Section 1981, and the NYSHRL are identical.  *Smith v. Town of Hempstead Dep't of Sanitation Sanitary Dist. No. 2*, 798 F. Supp. 2d 443, 451 (E.D.N.Y. 2011).

Transcript 123:17-21; 129:15-24). More significantly, Defendant Balter's behavior occurred nearly every time he and Plaintiff spoke. (Rosas Tr. 132:2-9). Defendant Balter's discriminatory behavior is corroborated by Mr. Rivera who testified that Defendant Mark used a Spanish accent when speaking to Plaintiff "[a]ll the time." (Rivera Tr. 95:12-96:2).

Plaintiff's allegations certainly rise to the level of severe or pervasive under the law. Indisputably, **the Second Circuit has found that a stream of racially offensive comments is sufficient to constitute a hostile work environment.** *See e.g.*, *Whidbee v. Garzarelli Food Specialities, Inc.*, 223 F.3d 62 (2d Cir. 2000)(emphasis added). *See also Pozo v. J & J Hotel Co., L.L.C.*, No. 06 Civ 2004 (RCC) (AJP), 2007 WL 1376403 (S.D.N.Y. May 10, 2007)(denying summary judgment where, on a daily basis over a period of five years, supervisor taunted maid about her Cuban accent and told her to go back to Cuba if she didn't like the working conditions); *Schwapp v. Town of Avon*, 118 F.3d 106 (2d Cir. 1997)(denying summary judgment in case where plaintiff recounted ten racially-hostile incidents during 20-month tenure). Plaintiff also subjectively experienced a hostile work environment. Plaintiff testified to the humiliation he experienced and the destructive impact that Defendant Balter's discriminatory conduct had on his work environment. (Rosas Tr. 159:20-162:3, 176:12-20).

Even assuming, *arguendo*, that the Court were to grant summary judgment for Plaintiff's hostile work environment claims under §1981 and the NYSHRL, the Court must find that Plaintiff's claims meet the more protective standard under the NYCHRL. "The New York City Human Rights Law was intended to be more protective than the state and federal counterpart." *Williams v New York City Hous. Auth.*, 872 N.Y.S.2d 27 (1st Dept. 2009)(quoting *Farrugia v. North Shore Hospital*, 820 N.Y.S.2d 718 (2006). The harassment no longer has to be severe or pervasive but rather, the burden is on the employer to show that the conduct at issue was no

more than petty slight or trivial inconvenience. *Williams,* 872 N.Y.S. 2d 27. "[I]n enacting the more protective Human Rights Law, the New York City Council has exercised a clear policy choice which this Court is bound to honor [. . .]. Thus, the case law that has developed in interpreting both the [state and federal anti-discrimination statutes] should merely serve as a base for the New York City Human Rights Law, not its ceiling." *Jordan v. Bates Advertising Holdings, Inc.*, 816 N.Y.S.2d 310, 317 (N.Y.Sup. 2006). Plaintiff's claims clearly meet both the more stringent severe or pervasive NYSHRL standard as well as the NYCHRL standard.

> **ii.    Defendant Balter's Racially Discriminatory Conduct is
>         Imputed to Defendant Balter Sales**

An employer is liable for a hostile work environment where the employer "knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Cajamarca v. Regal Entm't Grp.*, 863 F. Supp. 2d 237, 246 (E.D.N.Y. 2012). "Once an employer has knowledge of a racially combative atmosphere in the workplace, he has a duty to take reasonable steps to eliminate it." *Snell v. Suffolk County*, 782 F.2d 1094 (2d Cir. 1986).

Here, the employer clearly had knowledge of the harassment because Defendant Balter (an owner) was a harasser. (Balter Tr. 8:5-6). Moreover, not only was owner Defendant Balter the harasser, which makes him liable, but, because he was an owner, the discriminatory conduct can be imputed automatically to the company. *See e.g.*, *Burns v. McGregor Electronic Industries, Inc.*, 955 F.2d 559, 564 (8th Cir. 1992)(finding employer-company liable where the harassment was perpetrated by its owner); *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997)(finding that a supervisor may hold a sufficiently high position "in the management hierarchy of the company for his actions to be imputed automatically to the employer.").

## III.   THERE ARE GENUINE ISSUES OF MATERIAL FACT CONCERNING PLAINTIF'S SEXUAL HARASSMENT CLAIM

### a.   Plaintiff Has Established a Prima Facie Case of Sexual Harassment Under The NYSHRL and The NYCHRL

The fundamental analysis for a sexual harassment claim is no different for same-sex sexual harassment. Nothing in either the NYSHRL or the NYCHRL bars a claim of discrimination because of sex merely because the plaintiff and the defendant are of the same sex. *Tepperwien v. Entergy Nuclear Operations, Inc.*, 606 F. Supp. 2d 427, 438 (S.D.N.Y. 2009). A plaintiff can prevail in a same-sex sexual harassment case if he presents: (i) evidence that the harasser was homosexual and the harassment was motivated by sexual desire; (ii) evidence that the harasser was motivated by a hostility to the presence of the plaintiff's sex in the workplace; or (iii) evidence that the harasser treated men and women differently.

Plaintiff Rosas admittedly was unsure of Defendant Rosenberg's sexual orientation (Rosas Tr. 40:7-14). However, evidence in this case makes clear that Defendant Rosenberg treated male employees differently than female employees. In other words, Defendant Rosenberg's conduct was prompted because of Plaintiff's gender. For example, shortly after Plaintiff started working for Defendants, Defendant Rosenberg began drawing penises on Plaintiff's paychecks. (Pl. Aff. ¶9-11; Rosas Tr. 59:2-17). In fact, Defendant Rosenberg drew penises on other male employees' checks. For example, Mark Mungo confirmed that Defendant Rosenberg drew penises on all the drivers' checks, all of whom were male. (Mungo Tr. 19:3-5; 20:9-25). William Rivera further confirmed that Defendant Rosenberg did in fact draw penises on checks, as did another co-worker, David Vaughn. (Rivera Tr. 40:19-21; Freedman Decl., Ex. A). Nowhere in the record is there any evidence that Defendant Rosenberg was drawing penises on any of Defendant Balter Sales' female employees' checks. Nor was Defendant Rosenberg

11

touching Defendant Balter Sales' female employees' buttocks, trying to stick out his tongue in an attempt to lick Defendant Balter Sales' female employees or trying to nibble any female employees' ears. (Pl. Aff. ¶11; Mungo Tr. 20:20-21:4; Rivera Tr. 24:24-25:2; Rosas Tr. 110:19-23). Accordingly, Plaintiff has demonstrated that Defendant Barry Rosenberg certainly treated Plaintiff and other male employees much differently than their female counterparts.

### b. Plaintiff Was Subjected to a Sexually Hostile Work Environment

To make out a prima facie case of a sexually hostile work environment under the NYSHRL and the NYCHRL, a plaintiff must demonstrate: "(1) that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Van Zant,* 80 F.3d at 715. The conduct alleged must be severe or pervasive enough to create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." *Harris,* 510 U.S. at 22. As already set forth herein in Section II(b)(i), in determining whether an environment is hostile, the Court must consider the totality of the circumstances. *Id.*

Defendants, whose own management personnel are unsure whether a formalized anti-harassment policy exists (Balter Tr. 23:9-11; Lori Balter Tr. 9:2-6), boldly claim that Plaintiff's description of the sexually harassing conduct he endured is not credible. Defendants' purely speculative suggestion is belied by the testimony in this case replete with examples of the sexual harassment perpetrated upon Plaintiff. In this case, Defendant Rosenberg repeatedly harassed Plaintiff. Defendant Rosenberg drew penises on Plaintiff's paycheck approximately seven times during the course of Plaintiff's employment, and continued to do so even when Plaintiff asked him to stop. (Pl. Aff. ¶¶8-9; Rosas Tr. 68:2-12; 84:22:24; 92:2-25; Rivera Tr. 40:19-24; Mungo Tr. 54:3-5). Defendant Rosenberg also physically touched Plaintiff's buttocks. (Pl. Aff. ¶10;

Rosas Tr. 41:11-16; Mungo Tr. 43:23-44:4; 57:9-17).   Defendant Rosenberg tried to lick Plaintiff's face and stuck his tongue out in a sexually suggestive manner approximately three times over the course of Plaintiff's employment. (Pl. Aff. ¶10; Rosas Tr. 42:3-8; Mungo Tr. 43:15-44:23; 47:15-17).   All of the incidents occurred while Plaintiff was trying to perform his job. In fact, on one occasion, Defendant Rosenberg was riding with Plaintiff on a run and tried to lick Plaintiff's face while Plaintiff was driving, not only sexually harassing Plaintiff, but also putting both Plaintiff and Defendant Rosenberg in danger. (Pl. Aff. ¶10; Rosas Tr. 44:21-23). Defendant Rosenberg also tried to nibble on Plaintiff's ear. (Pl. Aff. ¶10; Rosas Tr. 41:11-16).

Plaintiff's allegations certainly rise to the level of severe or pervasive under the law. *See, e.g., Wahlstrom v. Metro-N. Commuter R.R. Co.*, 89 F. Supp. 2d 506, 521 (S.D.N.Y. 2000) (allegation that co-worker slapped plaintiff's buttocks sufficient to withstand summary judgment on sexually hostile environment claim as slap was neither harmless nor accidental); *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012)(finding that plaintiff, whose breast was squeezed, pleaded unwanted sexual contact sufficient to defeat defendants' motion because direct contact with an intimate body part constitutes one of the most severe forms of sexual harassment). Moreover, Defendant Rosenberg's sexually harassing behavior extends far beyond the bounds of any sort of male-on-male horseplay or teasing and that a reasonable person in Plaintiff's position would find severely hostile or abusive. *See e.g., Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81-82 (1998). Plaintiff also subjectively experienced a sexually hostile work environment. Plaintiff testified that he was humiliated and emotionally distressed by Defendant Rosenberg's sexually harassing conduct (Rosas 58:19-25; 76:8-20; 92:23-25; 108:7-12).

Even assuming, *arguendo*, that the Court were to grant summary judgment for Plaintiff's hostile work environment claims under the NYSHRL, the Court must find that Plaintiff's claims meet the more protective standard under the NYCHRL – that the sexual harassment at issue here rises, at the very least, to petty slights or trivial inconveniences. Again, it is well-settled that "[t]he New York City Human Rights Law was intended to be more protective than the state and federal counterpart. *Williams*, 872 N.Y.S. 2d at 33.  (quoting *Farrugia*, 820 N.Y.S.2d 718).  As argued above, in light of the material facts and prevailing case law, because Plaintiff's claims clearly meet the higher severe or pervasive standard, they similarly meet the more protective NYCHRL standard.

### c. Defendant Balter Sales Was Aware of the Sexually Hostile Work Environment But Failed to Take Corrective Action

An employer is liable for a hostile work environment where the employer "knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." *Cajamarca*, 863 F. Supp. 2d at 246.

In the instant case, Defendant Balter Sales was clearly aware of the sexual harassment because Plaintiff complained about it to his immediate supervisor, Anthony Castriello, union representative William Rivera, as well as Defendant Balter, an owner of Defendant Balter Sales. Mark Mungo, another employee, also placed Defendants on notice when he complained to owner Lori Balter several times after Defendant Rosenberg drew penis drawings on his checks. (Rosas Tr. 90:3-4; Mungo Tr. 19:8-20:4). Thus, Defendant Balter Sales is clearly liable for the sexually hostile work environment.

## IV.  PLAINTIFF HAS ESTABLISHED A *PRIMA FACIE* CASE OF RETALIATION UNDER 42 U.S.C. § 1981, THE NYSHRL AND THE NYCHRL

To establish a *prima facie* case of retaliation, Plaintiff must demonstrate that he (1) engaged in protected activity; (2) the Defendants were aware of this protected activity; (3) the Defendants took adverse action against the Plaintiff; and (4) there exists a causal connection between the protected activity and the adverse action. *Shelton v. Trs. of Columbia Univ.*, 369 Fed. App'x. 200, 201 (2d Cir. 2010)(citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 79 (2d Cir. 2001).[4]

In this case, Plaintiff engaged in protected activity when he complained to his supervisors Defendant Mark Balter, Anthony Castriello and Defendant Barry Rosenberg, and union shop steward William Rivera, about Defendant Balter's racially discriminatory conduct as well as Defendant Rosenberg's sexually discriminatory conduct.  Plaintiff's deposition testimony identifies numerous instances when Plaintiff complained of both the racially discriminatory and sexually harassing conduct. (Pl. Aff. ¶¶7,12; Rosas Tr. 50:10-23; 54:12-25; 55:12-17; 62:23-63-14;  67:21-25;  89:17-90:91-2;  93:6-23;  94:13-25;  133:18-134:3.)  William Rivera further corroborated that Plaintiff did in fact complain. (Rivera Tr. 21:19-22:20; 29:16-25). Defendants categorically deny this, further creating issues of fact and credibility. (Balter Tr. 16:3-6; 19:17-21).  Plaintiff also engaged in protected activity when, first he told Defendant Balter that he was going to retain an attorney, and then when Plaintiff actually did retain an attorney and initiated this action on August 27, 2012 (and sent a claim letter and litigation hold letter prior to that on February 13, 2012) (Pl. Aff. 16).

---

[4]     The Supreme Court has held that §1981 also protects workers from retaliation for having complained of discrimination.  *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008).

There is no genuine issue of fact regarding the protected nature of Plaintiff's complaints. The Second Circuit has repeatedly held that an employee "need not establish that the conduct they opposed was in fact a violation of Title VII," but rather only that he had a "good faith reasonable belief" that the underlying employment practice was unlawful. *Manoharan v. Columbia College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988). Opposition conduct does not lose protection even when the allegedly unlawful employment practice was later determined not to be in violation of Title VII. *Hearth v. Metropolitan Transit Commission*, 436 F. Supp. 635 (D. Minn. 1977). Thus, all that is necessary is a good faith reasonable belief that Plaintiff's claims regarding Defendants' employment practices were in violation of §1981, the NYSHRL and the NYCHRL. Despite Defendants' every effort to show that Plaintiff complained about issues other than unlawful discrimination (Plaintiff concedes he complained about unsafe truck conditions and Defendants' failure to adequately pay overtime), Plaintiff also indisputably complained about a litany of Defendants' conduct that violated §1981, the NYSHRL and the NYCHRL. Plaintiff has certainly met this standard and Defendants cannot show that Plaintiff's claims of race discrimination and sexual harassment were not genuinely or reasonably held.

Following Plaintiff's termination, Defendants further retaliated against Plaintiff (for Plaintiff retaining counsel) by filing a police report against Plaintiff alleging he stole property from Defendants. However, criminal charges against him were dismissed on July 24, 2012. Moreover, Defendants' own employees verified that Plaintiff did not steal any property. (Pardo Tr. 14:5-14; Freedman Decl. Ex. I). Defendants further retaliated against Plaintiff by filing a counterclaim in its answer in retaliation for Plaintiff engaging in the protected activity of retaining an attorney and filing his initiating complaint in this action. Defendants' counterclaim

16

was baseless in light of the fact that the merchandise was not only found (as attested to by Cam Pardo and William Rivera)(Pardo Tr. 14:5-14; Freedman Decl. Ex. I), but also that Defendants lacked any scintilla of evidence that Plaintiff stole any merchandise. In fact, when pressed, Defendants could not substantiate any of its baseless theft allegations, as set forth in further detail below, in Section IV(ii). Defendants continue to allege Plaintiff took merchandise in spite of the fact that Pardo testified that the alleged stolen merchandise was found just a few days after New Year's. (Pardo Tr. 14:2-15:9; Freedman Decl. Ex. I). Moreover, courts in this District have repeatedly found counterclaims lacking evidentiary support in employment lawsuits to be retaliatory. *See, e.g.*, *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 466-67 (S.D.N.Y. 2008)(granting plaintiff's motion for summary judgment after finding that defendant's counterclaims lacked any basis or evidentiary support).

Defendant was also aware of the protected activity as Plaintiff made direct complaints to Defendant Balter, Plaintiff's supervisor Anthony Castriello, and union shop steward William Rivera. Defendants' claim that they were not aware of Plaintiff's complaints because there is no documentary evidence is contradicted by testimony. (Rosas Tr. 46:10-17; 48:9-15; 54:22-55:4; 89:17-20; 276:2-8; Rivera Tr. 25:10-12; 44:13-19; 85:5-13; Mungo Tr. 19:18-25). While Plaintiff's proffered testimony alone is sufficient for the purposes of summary judgment, Plaintiff's version of events is extremely compelling in light of the fact that non-party witness William Rivera also testified that Defendant Balter did receive complaints from Plaintiff. (Rivera Tr. 25:10-12). Again, because Defendants deny that they were ever informed of the discrimination, Defendants have in fact created clear issues of material fact and credibility, which preclude summary judgment. With respect to the third prong, Plaintiff established that he suffered an adverse employment action when he was terminated by Defendant.

### i. Plaintiff has established a causal connection between the protected activity and the adverse action

"The final element in plaintiffs' prima facie case is to demonstrate a causal relationship between the protected activity and the adverse employment action" *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010)(internal citations omitted). A plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *University of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

> [P]roof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; *or* **(2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.**

*Hicks*, 593 F.3d at 170 (quotation omitted). The Court's "role…is to determine only whether proffered admissible evidence would be sufficient to permit a rational trier of fact to infer a retaliatory motive." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005)(citation omitted).

"In this circuit, a plaintiff can indirectly show a causal connection to support a discrimination or retaliation claim by showing that the protected activity was closely followed in time by the adverse [employment] action." *Gorman-Bakos v. Cornell Coop. Extension of Schenectady County*, 252 F.3d 545, 554 (2d Cir. 2001). While there is no "bright line rule" to define "the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, *Sicular v. N.Y.C. Dep't of Homeless Servs.*, No. 09-CV-0981, 2010 WL 423013, at *97-*98 (S.D.N.Y. Feb. 4, 2010) (citing *Gorman-Bakos*, 252 F.3d at 554), district courts have held "**two months** between the protected activity and the adverse employment action seems to be the dividing line." *Id.* (citing *Ruhling v. Tribune Co.*, 2007 WL 28283, *23 (E.D.N.Y. Jan. 3, 2007))(emphasis added).

18

Plaintiff has established that his complaints of racial discrimination and sexual harassment were a but-for cause of Plaintiff's termination. Following Plaintiff's last complaint to management, on December 7, 2011, he was subsequently terminated a mere three weeks later. (Pl. Aff. ¶13; Rosas Tr. 90:3-91:2). As the aforementioned set forth, Defendants' contention that Plaintiff was terminated for theft is contradicted. Plaintiff's complaints of discrimination and subsequent termination plainly fall within this accepted time frame.

Plaintiff has also established that, but for Plaintiff retaining an attorney and subsequently filing this action, Defendants would not have filed the police report against Plaintiff and would not have filed the counterclaim against Plaintiff. Plaintiff told Defendant Balter that he intended to obtain an attorney to pursue a harassment and discrimination case against Defendants on January 3, 2012, when Defendants terminated him. (Pl. Aff ¶16). The very next day Defendants filed their first police report against Plaintiff. Shortly thereafter, on February 1, 2012, Defendant Balter sent letters to the New York Department of Labor in an effort to deny Plaintiff unemployment. Defendants' retaliation continued when, after Plaintiff filed his initial complaint, Defendants filed a counterclaim against him.

Moreover, it is certainly worth noting that William Rivera, a former employee of Defendant Balter Sales,[5] is the only other employee who secured counsel to help him protect his rights and, in retaliation for retaining an attorney and in further retaliation for acting as a witness in this case, Mr. Rivera was similarly accused of theft by Defendants, and arrested,[6] clearly demonstrating a pattern and practice of retaliation by Defendants when employees get lawyers.

---

[5]     Mr. Rivera suffers from diabetes and was allegedly terminated because of his disability on April 27, 2012.

[6]     In fact, on August 30, 2013, the EEOC issued a determination on behalf of Mr. Rivera as follows:   "The Commission's investigation reveals that [Defendant Balter Sales'] proffered

### ii. Defendants' Proffered Non-Discriminatory Reasons for their Adverse Employment Actions are Pretext

Summary judgment is inappropriate "unless the defendants' proffered nondiscriminatory reason is dispositive and forecloses any issues of material fact." *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 124 (2d Cir. 2004)(quoting *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000). Summary judgment should not be granted here because Defendants do not offer legitimate reasons for their actions against Plaintiff – any reasons given are merely pretext for discrimination.

In order to show pretext, the plaintiff "may show that a discriminatory reason, rather than the proffered reason, more likely motivated the employer, or that the explanation the employer provided is 'unworthy of credence.'" *Gladwin v. Pozzi*, No. 06 Civ. 0650 (SCR) (JFK), 2010 WL 245575, *22-*23 (S.D.N.Y. Jan. 22, 2010)(citing *Texas Dept. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). To do so, a "plaintiff may demonstrate pretext by illuminating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' that would raise doubt in the fact finder's mind that the employer did not act for those reasons." *Id.* (*citing Bogdan v. N.Y. City Transit Auth.*, No. 02 Civ 09587 (GEL), 2005 WL 1161812 (S.D.N.Y. May 17, 2005)).

Defendants misguidedly argue that Plaintiff was terminated for stealing glasses as justification for his termination. However, the evidence does not support this as there is neither direct, nor indirect, evidence to substantiate this allegation. Cam Pardo testified that he actually found the glasses:

> A:  …I did locate them.

---

reasons for not committing retaliation against [Mr. Rivera] are not supported by the record. Based on the evidence on file, [Defendant Balter Sales] did in fact lure [Mr. Rivera] to a good-faith mediation so he could be arrested."

> Q: And – okay.  Continue.  I'm sorry.
> A: And I had called Ray to tell him that I found the glasses.  And I even told Marc, I called Marc and Laurie.  I actually called Laurie first to notify them that I located the glassware that was shipping directly.  (Pardo Tr. 13:19-14:14; Pardo Tr. 15:4-18).

The evidence in this case is awash with additional examples of Defendants' pretext. For example, Defendant Balter clearly testified that, with respect to the packing slips that Defendants claim Plaintiff changed, ***he did not know for a fact that Plaintiff actually changed any document***, nor did anyone actually tell him that Plaintiff changed any of the packing slips. (Balter Tr. 34:8:-17; 49:3-6; Lori Balter Tr. 20:17:19). Defendant Rosenberg also confirmed that he had no firsthand knowledge as to whether Plaintiff actually stole anything. (Rosenberg Tr. 23:11-15). During his deposition, Defendant Balter even said that, "I have to be very careful of accusing anybody of anything without evidence" (Balter Tr. 32:12-14), yet, he claimed he made the decision to terminate Plaintiff after reviewing video footage from Defendant Balter Sales' warehouse. However, it is clear from both Defendant Balter's and Defendant Rosenberg's testimony that the video footage sheds no light upon whether Plaintiff or any other employee took any merchandise. In fact, Defendant Balter swore in his affidavit in support of his complaint to the Assistant District Attorney ("ADA") that Defendant Barry Rosenberg inventoried Plaintiff's pallets and reviewed the packing slip with Plaintiff prior to allowing Plaintiff to leave Defendant Balter Sales' warehouse for the day. However, during Defendant Balter's deposition, he admitted that video footage revealed that in fact no warehouse manager reviewed packing slips with Plaintiff (which Plaintiff was not responsible for packing). (Pl. Aff. ¶¶24-26; Balter Tr. 59:3-21; 60:2-7; 61:25-62:19; 63:1-66; 67:2-7).

The video also revealed that, in spite of the fact that both Defendant Balter and Defendant Rosenberg swore under oath that Defendant Rosenberg witnessed Plaintiff load the allegedly

stolen merchandise onto his truck, Defendant Balter and Defendant Rosenberg later admitted that

the video evidence is to the contrary.[7]  (Balter Tr. 64:6-66; 67:2-7; Rosenberg Tr. 24:6-24).

> Q:  But you agree with me that Mr. Rosenberg did not witness, at least on the video that was shown, did not actually watch Ray load the truck?
> A:  He didn't watch him load the truck, correct.  (Balter Tr. 64:6-66; 67:2-7).
> Q:  Did you witness Ray Rosas load his pallet, his delivery onto the truck?
> A:  No.  (Rosenberg Tr. 39:25-40:3)
>
> Q:  He loads up whatever that little handle thing is to pull the pallet.  So you do you agree with me this video does not show you going over that pallet or anything on it with Ray?
> A.  Yes, I do agree.  (Rosenberg Tr. 45:7-22).

As yet another example of Defendants' false justification for Plaintiff's termination,

Defendant Balter, in his sworn affidavit to the ADA, testified that Minerva Taron, an employee

at Elmo Restaurant, specifically named Plaintiff and said that Plaintiff did not deliver any boxes

of champagne flutes as part of the shipment on said date. However, during her deposition, when

asked whether she knew who Plaintiff Rosas was, Ms. Taron testified that, "The name doesn't

sound familiar at all." (Taron Tr. 8:9-11; 18:3-5).

Defendant Balter's complaint to the ADA is rife with other inconsistencies as well. For

example, Defendant Balter testified that he spoke with Eustorgio Bonilla, of Becco restaurant,

and was informed by Mr. Bonillo that Plaintiff did not deliver any boxes of champagne flutes.

However, when pressed at his deposition, Defendant Balter admitted that he never actually spoke

with Mr. Bonillo. (Balter Tr. 42:5-23; 45:4-25). Defendant Balter's ADA complaint is further

contradicted by a letter from Becco to Defendant Balter Sales dated April 27, 2012, which stated

that "Mr. Bonilla was on an extended, open-ended leave of absence during the entire month of

December 2011.  He was not present to except [sic] any deliveries during that time & did not

---

[7]     It is worth noting that Defendant Balter admitted that Plaintiff did in fact have concerns regarding theft of merchandise and specifically asked him for locks for the back of the trucks to ward off potential theft.  (Balter Tr. 67:18-21; Rivera Tr. 92:8-7; Rosas Tr. 90:8-13; 276:2-8).

receive any orders from Balter sales during his absence from Becco." (Freedman Decl. Ex. J). Clearly this calls Defendant Balter's credibility into question as it would have been physically implausible for Defendant Balter (or any other of Defendants' employees) to have had a conversation with Mr. Bonilla in which Mr. Bonilla explicitly identified Plaintiff as not having delivered glasses.  Finally, as perhaps the most resounding example of Defendants' pretext, the allegedly stolen $700.40 of merchandise was recovered. (Pardo Tr. 14:2-15-9; Freedman Decl. Ex. I).

## V.    OTHER ISSUES THAT PRECLUDE SUMMARY JUDGMENT

### a.  Arnold Balter is Liable for All State Law Claims

Plaintiff seeks to hold Defendant Arnold Balter liable under his NYSHRL and NYCHRL claims. Under NYSHRL §296(1), which prohibits certain acts of discrimination by an employer, the New York Court of Appeals has held that individual liability may attach to any supervisor if he/she is "shown to have any ownership interest **_or_** any power to do more than carry out personnel decisions made by others." *See Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 542 (N.Y. 1984) (emphasis added). Thus, a corporate employee can be subject to individual liability if he has an ownership interest in the corporate employer. *See e.g.*, *Gallegos v. Elite Model Mgmt. Corp.*, 28 A.D. 3d 50 (N.Y. App. Div. 1st Dep't 2005). NYCHRL §8-1079(13) also provides for strict liability in the employment context for acts of managers and supervisors. *See, e.g.*, *Kennington v. 226 Realty* LLC, 2013 NY Slip Op 32708(U)(N.Y. Sup. Ct. Oct. 24, 2013). Accordingly, as Arnold Balter clearly has not resigned his ownership interest in the company, he is individually liable for Plaintiff's NYSHRL and NYCHRL harassment and discrimination claims.  (Balter Tr. 8:16-18).

### b.  Defendants Interfered with Plaintiff's Protected Rights

NYCHRL §8-107(19) provides that "[i]t shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of . . . any right granted or protected pursuant to this section." A claim of interference requires plaintiff to allege that individuals on behalf of the entity took action to prevent the claimant from obtaining a protected right. *Montanez v. N.Y. City Hous. Auth.*, 5 A.D.3d 314 (N.Y. App. Div. 1st Dep't 2004).

As the foregoing sets forth, Defendants deprived Plaintiff of a work environment free of both racial discrimination and sexual harassment. Further, after Plaintiff retained his current counsel, Defendants subsequently retaliated and filed its criminal complaint against him, in a clear attempt to intimidate and threaten Plaintiff from pursuing his claims further, and in an attempt to interfere with Plaintiff's right to bring this lawsuit. Accordingly, Plaintiff has sufficiently pled his fifth cause of action for interference with protected rights.

### c. Assault and Battery

Plaintiff sustained intentional and unwelcome physical contact of a sexual nature when Defendant Rosenberg touched and attempted to touch Plaintiff inappropriately. Defendant Barry Rosenberg's assault and battery included touching Plaintiff's buttocks, poking Plaintiff's buttocks, and trying to lick Plaintiff's face, during the course of Plaintiff's employment. (Pl. Aff. ¶10; Rosas Tr. 41:11-16; 42:3-8; 44:21-23; 58:19-25; Mungo Tr. 43:15-44:4; 47:15-17; 57:9-17). Defendants incorrectly argue that Plaintiff's cause of action for assault and battery was not filed in a timely manner.  Plaintiff only testified at his deposition that he believed Defendant Rosenberg did not make physical contact with him after December 2011. However, the last instance where Defendant Rosenberg touched Plaintiff's buttocks occurred in or around late September, early October 2011. (Pl. Aff. ¶10). Accordingly, as Plaintiff filed his complaint on

August 27, 2012, his assault and battery claim is timely. This was corroborated by Mark Mungo. (Mungo Tr. 43:15-44:4; 57:9-25; 59:12-19). Moreover, because Defendants were aware of the assault and battery, they are liable. *See e.g.*, *Cajamarca*, 863 F. Supp. 2d at 246.

### d.   Aiding and Abetting Claim

An individual defendant may be held personally liable under the NYSHRL and the NYCHRL if he participates in conduct giving rise to the discrimination claim. *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009) (citation omitted).[8] As set forth herein, Plaintiff was clearly subjected to a sexually hostile work environment throughout the course of his employment for which Defendant Balter Sales, as Plaintiff's employer, is liable. Plaintiff repeatedly complained to his supervisors, including Defendant Balter, about Defendant Rosenberg's behavior. Accordingly, Defendant Balter is liable because he condoned Defendant Rosenberg's sexually harassing behavior by allowing it to continue despite his knowledge of such behavior. *See e.g.*, *Perks v. Town of Huntington*, 251 F. Supp. 2d. 1143, 1160-61 (E.D.N.Y. 2003) (finding that managers or supervisors who actually participate in the conduct giving rise to a discrimination claim may be individually liable for aiding and abetting discrimination by an employer); *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F. Supp. 2d 345, 360-361 (S.D.N.Y. 2007) (summary judgment denied where genuine issue of material fact existed as to whether employer condoned and encouraged discriminatory behavior).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests this Court deny Defendants' motion for summary judgment in its entirety.

---

[8]    "The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is virtually identical." *Feingold v. New* York, 366 F.3d 138, 158 (2d Cir. N.Y. 2004)(citation and internal marks omitted).

Dated:      New York, NY
            April 28, 2014

                         **ARCÉ LAW GROUP, PC**

                         Respectfully submitted,

                         */s/ Alexandra L. Freedman*
                         Alexandra L. Freedman, Esq.
                         Bryan S. Arce, Esq.
                         *Attorneys for Plaintiff*
                         30 Broad Street, 35th Floor
                         New York, NY 10004
                         (212) 248-0120

TO:    Lisa M Sofio, Esq.
       Michael McGuire, Esq.
       Hollyer Brady LLP
       60 East 42nd Street, Suite 1825
       New York, NY 10165
       (212) 661-1903
       *Attorneys for Defendants*