UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                               :

RAYMOND ROSAS,                      :
                                               :

                    Plaintiff,   :

                                             :

          - against -         :

                                           :

BALTER SALES CO. INC., ARNOLD    :
BALTER, MARK BALTER, and BARRY   :
ROSENBERG,                      :
                                           :

               Defendants.  :
                                           :
--------------------------------------------------------X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: ___3/30/2015___

12-CV-6557 (VSB)

**MEMORANDUM & ORDER**

Appearances:

Alexandra L. Freedman
Bryan S. Arce
Arce Law Group, PC
New York, New York
*Counsel for Plaintiff*

Michael McGuire
Hollyer Brady LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

      Plaintiff Raymond Rosas, after being fired from his job as a delivery driver at Defendant

Balter Sales Co. Inc. ("Balter Sales"), brings this lawsuit against Defendants Balter Sales, Marc

Balter, Arnold Balter, and Barry Rosenberg alleging:  (1) discrimination on the basis of race in

violation of Federal, State, and City civil and human rights laws;[1] (2) discrimination on the basis

of sex; (3) discriminatory retaliation; (4) interference with protected rights; (5) aiding and

---

[1] Specifically, Plaintiff alleges discrimination in violation of:  42 U.S.C. § 1981 ("Section 1981"), the New York State Human Rights Law, N.Y. Exec. Law § 296 (the "NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code § 8-107(1a) (the "NYCHRL").

abetting discriminatory conduct; and (6) common-law assault and battery.[2]  Before me is

Defendants' motion for summary judgment against all of Plaintiff's claims.  Because I find that

there are genuine issues of material fact as to Plaintiff's claims of:  race discrimination against all

Defendants; retaliation against all Defendants; aiding and abetting against Marc Balter; and

assault and battery against Barry Rosenberg, the motion for summary judgment is DENIED with

respect to those claims.  The motion for summary judgment also is DENIED with respect to

Plaintiff's claims against Arnold Balter under the New York City Human Rights Law.  Because I

find that there are no genuine issues of material fact concerning Plaintiff's claims of sex

discrimination against all Defendants; interference with protected rights against all Defendants;

and aiding and abetting against Barry Rosenberg, the motion for summary judgment is

GRANTED with respect to those claims.  The motion for summary judgment also is GRANTED

with respect to Plaintiff's claims against Arnold Balter under the New York State Human Rights

Law.

## I.   **Background**

### A. *Parties*

Balter Sales is a family-owned business that sells and delivers restaurant supplies in the

tri-state area.  (Plf.'s 56.1 ¶ 1.)[3]  The company is located on the Bowery in Manhattan and

employs approximately thirty-five people.  (*Id.* ¶¶ 2, 3.)  Plaintiff was hired as a delivery driver

for Balter Sales in the fall of 2010.  (*See id.* ¶ 4; Rosas Aff. ¶ 2.)[4]  He is a Hispanic male.  (Rosas

---

[2] Defendants assert a counterclaim against Plaintiff for theft, seeking $700.40.  (Doc. 10 at 14-15.)  That claim is not at issue here.

[3] "Plf.'s 56.1" refers to Plaintiff's Local Civil Rule 56.1 Counter-Statement of Material Facts.  (Doc. 66-11.)  References to individual paragraphs of Plaintiff's 56.1 Counter-Statement are to Defendants' statements, Plaintiff's responses, or both.

[4] "Rosas Aff." refers to the Affidavit of Raymond Rosas in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment.  (Doc. 67.)

Aff. ¶ 1; Rosas Tr. at 121-22, 129-34.)[5]

Defendant Marc Balter is an owner of Balter Sales, and currently its Vice President.  (M. Balter Tr. at 7-8.)[6]  He did not have an official title at the time of Plaintiff's employment.  (*Id.*)  Defendant Arnold Balter is also an owner of Balter Sales, but is retired.  (Plf.'s 56.1 ¶ 57.)  At the time of Plaintiff's employment, Defendant Arnold Balter was not involved in active management of the company.  (*Id.*; M. Balter Tr. at 11.)  Defendant Rosenberg was the assistant warehouse manager during the time period that Plaintiff worked at Balter Sales.  (Rosenberg Tr. at 7-8;[7] M. Balter Tr. at 11.)  Rosenberg did not have the power to hire and fire employees, to supervise or control employee work schedules or employment conditions, to determine rate and methods of payment, or to maintain employment records.  (Plf.'s 56.1 ¶ 45.)

## B.  *Race Discrimination Allegations*

Plaintiff's allegations of race discrimination principally relate to Defendant Marc Balter's race-based and demeaning comments; at times, he also mocked or mimicked Plaintiff in a Spanish accent.  To a greater of lesser extent, several former employees confirm Plaintiff's allegations concerning Marc Balter's actions and/or attitude towards Plaintiff and other non-white individuals.

Plaintiff testified at his deposition that Marc Balter imitated a Spanish accent during most of their conversations, which occurred two to three times per week throughout Plaintiff's employment.  (Rosas Tr. at 132.)  Although Plaintiff speaks Spanish, he never spoke Spanish with other Balter Sales employees.  (*Id.* at 184.)  One former employee of Balter Sales, William Rivera, testified that Marc Balter spoke to Plaintiff in a Spanish accent "all the time," (Rivera Tr.

---

[5] "Rosas Tr." refers to the transcript of the September 26, 2013 deposition of Raymond Rosas.

[6] "M. Balter Tr." refers to the transcript of the October 18, 2013 deposition of Marc Balter.

[7] "Rosenberg Tr." refers to the transcript of the October 18, 2013 deposition of Barry Rosenberg.

at 96),[8] did not like black or Hispanic people, (*id.* at 76-79), and used racial slurs against black individuals, (*id.*).  Another former employee, Mark Mungo, testified that Marc Balter treated white employees more favorably than black or Hispanic employees.  (Mungo Tr. at 67 ("he would treat us like we're horses").)[9]  This testimony was echoed by Cam Pardo, a Balter Sales employee worked at the company at the same time as Plaintiff.  (*See* Pardo Tr. at 27.)[10]  During the time Plaintiff was employed at Balter Sales, the company also had white drivers.  (Plf.'s 56.1 ¶ 58.)  Plaintiff also testified that in early December 2011 Marc Balter told Plaintiff he had a "Latin attitude."  (*See* Rosas Tr. at 121-22, 124, 126.)  All of the other Balter Sales employees who were asked during discovery whether they had ever head Marc Balter refer to Plaintiff's "Latin attitude" denied hearing such a comment.  (Plf.'s 56.1 ¶ 39.)

Marc Balter in his deposition denied speaking to any employee in a Spanish accent, (M. Balter Tr. at 11), denied ever trying to speak Spanish at the workplace, (*id.* at 16), and denied using racial slurs, (*id.* at 16-19).

Plaintiff testified that he complained to Marc Balter about his race-based comments and his attitude towards minorities on or about December 11, 2011.  (*See* Rosas Tr. at 133-34 ("Why are you always so offensive towards us?  Why are you always so offensive toward me, the Spanish guys and even the black guys?"); *see* Rosas Aff. ¶ 7.)  In an affidavit submitted in opposition to this motion, Plaintiff also claims to have complained to Marc Balter in August 2011 and on December 27, 2011.  (Rosas Aff. ¶ 7.)  Marc Balter denied in his deposition

---

[8] "Rivera Tr." refers to the transcript of the October 2, 2013 deposition of William Rivera.

[9] "Mungo Tr." refers to the transcript of the October 22, 2013 deposition of Mark Mungo.  By way of explanation concerning why he thought Marc Balter treated blacks and Hispanics like horses, Mungo, who is black, described how he once had to load an entire truck himself without any help as some sort of punishment, and Marc Balter only offered to help when Mungo was almost done.  Mungo thought that Marc Balter acted this way because Mungo was "black or not Caucasian".  (*See* Mungo Tr. 67-68.)

[10] "Pardo Tr." refers to the transcript of the October 18, 2013 deposition of Cam Pardo.

receiving complaints about his conduct.  (M. Balter Tr. at 19.)

### C. *Sex Discrimination Allegations*

Plaintiff's sex discrimination allegations identify the perpetrator as Defendant Barry Rosenberg.  Specifically, Defendant Rosenberg is alleged to have on various occasions:  (1) drawn penises on Plaintiff's paycheck envelopes, paychecks or pay stubs, (2) attempted to lick Plaintiff's face, (3)  attempted to nibble Plaintiff's ear; (4) stuck his tongue out at Plaintiff, and (3) grabbed or touched Plaintiff's buttocks.

Plaintiff testified at his deposition that Defendant Rosenberg started drawing penises on Plaintiff's weekly paycheck envelope roughly two months after he had started working at Balter Sales.  (Rosas Tr. at 59.)  He further testified that these drawings appeared on his paycheck envelope approximately seven times.  (*Id.* at 84.)  He testified that the drawings "[h]umiliated" him.  (*Id.* at 92.)  Former employee Rivera testified that he saw Rosenberg draw a penis on Plaintiff's paycheck, (Rivera Tr. at 29-33); another former employee, David Vaughn, also swears to seeing a penis on Plaintiff's paycheck, (Freedman Decl. Ex. A);[11] and a third employee, Mungo, testified that he too received paycheck envelopes with drawings of penises, (Mungo Tr. at 20).  Plaintiff testified that he reported the drawings to warehouse manager Anthony Castriello at various times, (Rosas Tr. at 62, 92-93), and to Marc Balter on December 7, 2011, (*id.* at 90). He also testified that he told Rosenberg to stop drawing penises on his paychecks.  (*Id.* at 92-93.) Two former employees, Rivera and Mungo, testified that they each informed Lori Balter, another owner of the company, about the matter.  (Rivera Tr. at 24-25; Mungo Tr. at 19.)  Rivera also corroborated Plaintiff's account that Plaintiff complained to Marc Balter.  (Rivera Tr. at 44.)

---

[11] "Freedman Decl." refers to the Declaration of Alexandra L. Freedman in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment.  (Doc. 66.)

Plaintiff acknowledges that none of the pay stubs he produced in discovery contained a drawing of a penis, (Plf.'s 56.1 ¶ 43), but testified at his deposition that he kept the pay stubs with drawings of penises in the truck he drove at Balter Sales and did not take them with him when he was fired, (Rosas Tr. at 60-61).

Plaintiff also testified that during his employment Rosenberg tried to lick his face several times and grabbed his buttocks two or three times.  (*See id.* at 54, 102, 107-08, 196-97.)  Plaintiff testified that the first time Rosenberg grabbed his buttocks occurred one to two months after his employment began.  (*See id.* at 107.)  During his deposition Plaintiff could not recall the last time Rosenberg grabbed his buttocks, (*see id.*), but states in an affidavit submitted in opposition to this motion that it was around late September or October 2011, (Rosas Aff. ¶ 10).  Mungo testified to witnessing Defendant Rosenberg attempt to lick Plaintiff's face once and saw him touch Plaintiff's buttocks twice.  (Mungo Tr. at 43-44, 47-49.)  Mungo remembers Plaintiff saying in response to Rosenberg touching his buttocks, "I don't play games like that," and Rosenberg responding by laughing and walking away.  (*Id.* at 44.)

Plaintiff does not know Rosenberg's sexual orientation.  (Plf.'s 56.1 ¶ 41.)  Mungo also testified that he does not know Rosenberg's sexual orientation.  (Mungo Tr. at 50.)  During the time Rosas was employed at Balter Sales, all of the drivers were men.  (Plf.'s 56.1 ¶ 42.)

Rosenberg denied during deposition all of the sexual harassment allegations against him. (Rosenberg Tr. at 11, 49-50.)

### D.  *Plaintiff's Firing*

According to Defendants, on December 28, 2011, Plaintiff's route included deliveries of champagne glasses to two restaurants, Elmo Restaurant and Becco.  (*See* Sofio Decl. Exs. G, H,

K, L, O.)[12]  Plaintiff testified that he could not recall which restaurants he delivered to on that day.  (Rosas Tr. at 200-01, 223.)

According to Defendants, Rosenberg checked that all of the items for the orders placed by Elmo Restaurant and Becco were assembled onto pallets for Plaintiff to load into his truck, and Rosenberg signed the respective order forms to indicate the same.  (*See* Sofio Decl. Exs. G, H, K; Rosenberg Tr. at 24.)  Plaintiff acknowledged that warehouse managers were in charge of loading pallets, (Rosas Tr. at 200), but disputes that Rosenberg reviewed these pallets, (Rosas Aff. ¶¶ 24-25).  Marc Balter and Rosenberg admitted during their depositions that the surveillance video footage from December 28 did not show Rosenberg checking the items on the pallets or reviewing them with Plaintiff.  (M. Balter Tr. at 59-60; Rosenberg Tr. at 44-45.)

Later that day, Balter Sales received a telephone call from Elmo Restaurant stating that it had not received the champagne glasses it ordered.  (Plf.'s 56.1 ¶ 8.)  Balter Sales also received a call from Becco stating that it had not received the champagne glasses it had ordered.  (*See id.* ¶ 14.)

Marc Balter states in an affidavit that he attempted to call Plaintiff on December 28, (Doc. 59 ¶ 11), while Plaintiff states in an affidavit that he received no such call, (Rosas Aff. ¶ 17).  Marc Balter spoke to Plaintiff the next day and asked what happened to the champagne glasses for the two restaurants; Plaintiff said that he did not know.  (*See* Plf.'s 56.1 ¶¶ 11, 16.)  Balter Sales sent replacement shipments of champagne glasses to both Elmo Restaurant and Becco.  (*Id.* ¶ 17.)

According to Defendants, Plaintiff was scheduled to deliver champagne glasses to another restaurant, Pigalle, later that week.  (*See* Sofio Decl. Exs. I, K, O.)  Plaintiff testified that

---

[12] "Sofio Decl." refers to the Declaration of Lisa M. Sofio.  (Doc. 56.)

he could not recall whether he delivered to Pigalle on the day in question.  (Rosas Tr. at 250.)
Pigalle never received its champagne glasses and complained to Marc Balter.  (Plf.'s 56.1 ¶ 19.)
Marc Balter spoke to the Balter Sales manager in charge of Plaintiff's deliveries, (*see* Plf.'s 56.1
¶ 20), who testified that he clearly recalled giving the glasses to Plaintiff for delivery, (DiBiasi
Tr. at 19-20).[13]  Plaintiff disputes that testimony.  (Rosas Aff. ¶ 26.)  Balter Sales sent Pigalle a
replacement shipment of champagne glasses.  (Plf.'s 56.1 ¶ 22.)

According to Defendants, after the incident with Pigalle, Marc Balter checked
surveillance video and was able to confirm with the help of Rosenberg that the three missing
orders had all been assembled on Plaintiff's pallets for delivery.  (Sofio Decl. Exs. I, K; Doc. 59
¶ 17.)  Plaintiff generally calls into question whether he was involved in those deliveries,
including denying that his handwriting appears on the relevant paperwork. (*See* Rosas Aff.
¶¶ 20-26.)  Defendants acknowledged that the available surveillance video does not establish
what was on the pallets, and that it does not show Rosenberg checking the items on the pallets.
(*See* M. Balter Tr. at 59-60; Rosenberg Tr. at 44-45.)

The parties dispute whether Marc Balter attempted to call Plaintiff on December 30,
2011, (*see* Plf.'s 56.1 ¶¶ 24-25), but it is undisputed that Marc Balter fired Plaintiff during a
meeting on January 3, 2012, (*id.* ¶¶ 26, 28), which was Plaintiff's next workday, (Doc. 59 ¶ 19;
*see* Pardo Tr. at 45-46).  Marc Balter stated during that meeting that if Plaintiff would not
disclose to whom he sold the champagne glasses, the matter would be reported to the police as a
crime.  (Plf.'s 56.1 ¶ 28.)  He fired Plaintiff for stealing merchandise.  (*Id.*)  There was no
mention made of Plaintiff's race during this meeting.  (*Id.* ¶ 29.)

Later in January 2012 Balter Sales received a complaint of missing goblet glasses from

---

[13] "DiBiasi Tr." refers to the transcript of the October 22, 2013 deposition of Arthur DiBiasi.

another restaurant, Beacon.  (*Id.* ¶ 30.)  Marc Balter believed based on paperwork that Plaintiff

was in charge of that delivery, which was made on December 1, 2011, (Doc. 59 ¶ 23), but

Plaintiff testified that he did not recognize the paperwork in question and that his handwriting

does not appear on it, (Rosas Tr. at 252-53; Rosas Aff. ¶ 23.)  Defendants allege, and Plaintiff

denies, that Plaintiff manipulated the paperwork for the deliveries to Elmo Restaurant, Becco,

and Beacon.  (*See* Plf.'s 56.1 ¶¶ 13, 15, 32-33.)

Also at some point in January 2012, Plaintiff complained to his union representative

about his termination.  (*Id.* ¶ 36.)  The union took no action.  (*See id.* ¶ 37.)

On January 4, 2012, Marc Balter filed a police report alleging that Plaintiff stole

merchandise from Balter Sales.  (*Id.* ¶ 46.)  On April 6, 2014, Marc Balter filed a criminal

complaint.  (M. Balter Tr. at 36-37.)  According to an affidavit Marc Balter submitted in

connection with the complaint, he spoke with Eustorgio Bonilla of Becco regarding the

champagne glasses.  (Sofio Decl. Ex. O at 2.)  However, in his deposition Marc Balter testified

that he did not speak with Bonilla personally.  (M. Balter Tr. at 42-45.)  Becco's general

manager also provided a signed letter in the criminal case against Plaintiff stating that Bonilla

was on a leave of absence from the restaurant the entire month of December.  (Doc. 66-10.)  The

New York District Attorney's Office charged Plaintiff with petit larceny.  (Plf.'s 56.1 ¶ 50.)

Those charges were later dismissed.  (*See id.* ¶ 52.)

Cam Pardo testified that he recovered the glassware that was supposedly missing from

Elmo Restaurant the day after the scheduled delivery, and informed Marc and Lori Balter that he

had found the glasses.  (*See* Pardo Tr. at 13-15, 45.)  Pardo also testified that he was not aware

that Plaintiff had been accused of stealing from deliveries to other restaurants.  (*See id.* at 45-46.)

Pardo described the days leading up to New Year's Day as "chaotic"[14] for Balter Sales, and stated that employees often made mistakes in that environment.  (*See id.* at 12-13, 17.)

## II.   **Procedural History**

Plaintiff initiated this action by filing a complaint on August 27, 2012.  (Doc. 1.) Defendants filed their answer on January 3, 2013.  (Doc. 10.)  On January 22, 2013, Plaintiff filed an amended complaint.  (Doc. 15.)  Defendants failed to answer the amended complaint, so Plaintiff moved for default judgment on April 19, 2013.  (Doc. 25.)  Defendants filed an answer and an opposition to the motion for default judgment on May 13, 2013.  (Docs. 29, 30.)  Judge Colleen McMahon, to whom the case was then assigned, denied Plaintiff's motion for default judgment on May 22, 2013.  (Doc. 32.)

The case was reassigned to me on January 27, 2014.  (*See* Docket Entry of Jan. 27, 2014.) The parties appeared before me on February 21, 2014 to discuss Defendants' anticipated motion for summary judgment.  Defendants filed their motion, a memorandum, a declaration with exhibits, and various affidavits with exhibits in support of their motion on March 20, 2014, (Docs. 53-59); Plaintiff filed a memorandum, declaration with exhibits, and an affidavit in opposition to Defendants' motion on April 28, 2014, (Docs. 65-67); and Defendants filed their reply and a declaration on May 12, 2014, (Docs. 70, 72).

## III.   **Legal Standard**

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a).

---

[14] Specifically, Pardo testified that by "chaotic" he meant that during this time "hundreds of hundreds and hundreds of cases of champagne glasses went out to various customers. We were swamped."  (Pardo Tr. at 12-13.)

"[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ."  Fed. R. Civ. P. 56(c)(1).  In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(2), (3).

Finally, in considering a summary judgment motion, the Court must "view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in

favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal

citations and quotation marks omitted); *see also Matsushita*, 475 U.S. at 587.  "[I]f there is any

evidence in the record that could reasonably support a jury's verdict for the non moving party,"

summary judgment must be denied.  *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d

Cir. 2002).

### IV.   Discussion

#### A.   *Race Discrimination*[15]

##### 1.   Discriminatory Termination

###### a.   Standard

Claims for race discrimination under Section 1981 are analyzed using the three-step,

burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792, 802–03 (1973).  A plaintiff first bears the burden of establishing a prima

facie case of discrimination by showing:  (1) membership in a protected class; (2) that he

performed his duties satisfactorily; (3) that he suffered an adverse employment action, and (4)

that the adverse employment action occurred under circumstances that give rise to an inference

of discrimination on the basis of his race.  *McDonnell Douglas*, 411 U.S. at 802; *accord Brown

v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012).

If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to

provide evidence that the adverse action was based upon a "legitimate, nondiscriminatory

reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993) (internal quotation marks

omitted); *accord Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014).  If the

---

[15] By letter dated January 27, 2014, Plaintiff agreed to waive the Section 1981 claims against Defendants Arnold Balter and Rosenberg, and to waive any NYSHRL or NYCHRL claims against Defendant Rosenberg.  (Sofio Decl. Ex. B.)

defendant articulates a nondiscriminatory explanation for the adverse employment action, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (internal quotation marks omitted); *accord Kirkland*, 760 F.3d at 225.  A plaintiff may do so "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  *Hicks*, 509 U.S. at 517.

"Ordinarily, plaintiff's evidence establishing a prima facie case and defendant's production of a nondiscriminatory reason for the employment action raise a question of fact to be resolved by the factfinder after a trial.  Summary judgment is appropriate at this point only if the employer's nondiscriminatory reason is dispositive and forecloses any issue of material fact." *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000) (internal citations omitted); *see also Holtz v. Rockefeller & Co.*, 258 F.3d 62, 78 (2d Cir. 2001) ("[T]he plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." (internal quotation marks omitted)).  A plaintiff may prevail by relying on "the evidence comprising the prima facie case, without more," *Holtz*, 258 F.3d at 79 (internal quotation marks omitted), and also by "demonstrating weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's nondiscriminatory reason, *Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  A plaintiff's own testimony can be sufficient to defeat summary judgment.  *Holtz*, 258 F.3d at 78.

"[C]laims brought under [the NYSHRL] are analytically identical to claims brought

under Title VII."[16] *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d

Cir. 2011) (internal quotation marks omitted).  However, the standard to which a plaintiff is held

under the NYCHRL is lower, and a defendant is "entitled to summary judgment . . . only if the

record establishes as a matter of law that discrimination play[ed] *no* role in its actions," *Mihalik*

*v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013) (internal

quotation marks omitted; alteration and emphasis in original).

> **b.**   Discussion

It is undisputed that Plaintiff satisfied the first three elements of a prima facie claim.  He

is Hispanic; Defendants do not contest that he performed his job satisfactorily; and termination is

the quintessential adverse employment action.  To raise an inference of discrimination, Plaintiff

contends that Marc Balter disparaged and mocked him for being Hispanic, treated white

employees more favorably than non-white employees such as Plaintiff, and fired Plaintiff soon

after he complained about Balter's actions.

Because "smoking gun" evidence of racial discrimination is rarely available, plaintiffs

frequently must raise an inference of discrimination through circumstantial evidence.  *Chambers*

*v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994).  Such circumstances might include "the

employer's criticism of the plaintiff's performance in ethnically degrading terms, or its invidious

comments about others in the employee's protected group, or the more favorable treatment of

employees not in the protected group, or the sequence of events leading to the plaintiff's

discharge."  *Id.* (internal citations omitted).  A plaintiff's burden is frequently described as *de*

*minimis*.

---

[16] The same "core substantive standards" applicable to Title VII claims are applicable to the § 1981 claims at issue
on this motion.  *Patterson*, 375 F.3d at 225.

Here, despite that low hurdle, Plaintiff cannot raise an inference of discrimination based on disparate treatment.  Although Plaintiff argues that the record is "replete" with evidence of Marc Balter treating white employees more favorably than black or Hispanic employees, (Plf.'s Mem. 7),[17] that evidence boils down to several generalized statements provided by other former employees, (*see* Rivera Tr. at 79; Mungo Tr. at 67; Pardo Tr. at 27).  These allegations are insufficient to raise an inference of discrimination based on disparate treatment.

In contrast, Plaintiff's other allegations—that Marc Balter, the supervisor who actually fired Plaintiff, mimicked a Spanish accent in an offensive way throughout Plaintiff's employment,[18] (Rosas Tr. at 132), and less than a month before firing Plaintiff attributed certain aspects of his job performance to Plaintiff's "Latin attitude," (Rosas Tr. at 121-22, 124, 126),—narrowly make out the final element of a prima facie case.  Given the allegedly ongoing and pervasive nature of the taunts, which reasonably could be viewed as discriminatory, and the fact that they were made by the person who fired Plaintiff, these comments cannot be written off as "stray remarks."  *Cf. Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).  Further, Plaintiff swears that he complained to Marc Balter about his treatment once in August and twice in December 2011, including less than a week before Plaintiff was fired.  (*See* Rosas Tr. at 133-34; Rosas Aff. ¶ 7.)  This close proximity of events, without any suggestion that Defendants took steps to remedy the situation, could allow a rational finder of fact to infer discrimination in Plaintiff's firing.  *Cf. E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 855 (S.D.N.Y. 2013) (proximity of events can raise inference of discrimination, but passage of two months and employer's intervening attempt at accommodation defeated inference).  The burden shifts to

---

[17] "Plf.'s Mem." refers to Plaintiff's Memorandum of Law in Opposition to Summary Judgment.  (Doc. 65.)

[18] This was corroborated by Rivera who testified that Marc Balter spoke to Plaintiff in a Spanish accent "all the time."  (Rivera Tr. at 96.)

Defendants.

I find that Defendants have carried their burden by putting forward a legitimate, non-discriminatory reason:  that they suspected Plaintiff of stealing merchandise from them.  There is sufficient evidence in the record to support Defendants' belief.  Specifically, there is evidence that they received calls from clients stating that orders were incomplete or missing; that they filled those orders again; and that Plaintiff was apparently the driver who made the deficient deliveries.  In addition, reports of this nature arose from deliveries on three separate days, to three different customers, suggesting more than a one-time mistake.

To carry his final burden of demonstrating pretext, Plaintiff argues that Defendants' allegation of theft should not be believed.  Plaintiff points out that another employee, Cam Pardo, found the glasses supposedly missing from Elmo Restaurant, (Pardo Tr. at 13-15, 45), that Defendants acknowledged that the surveillance video footage on which they largely based their belief that Plaintiff stole from them did not unequivocally support that belief,[19] (M. Balter Tr. at 59-60; Rosenberg Tr. at 44-45), and that Marc Balter made a contradictory statement regarding his conversations with an employee at Becco in his affidavit in support of criminal charges against Plaintiff, (*see* M. Balter Tr. At 42-45; Sofio Decl. Ex. O at 2.)  In addition, the parties dispute whether handwriting on the packing slips accompanying the missing deliveries is probative, (*see* Rosas Aff. ¶¶ 20-23; Rosas Tr. at 252-53; Doc. 59 ¶¶ 9, 23), and Plaintiff generally denies knowing what happened to the glasses, (Plf.'s 56.1 ¶¶ 11, 16).  Finally, Pardo testified that Balter Sales was chaotic during the time Plaintiff allegedly stole the champagne glasses.  (Pardo Tr. at 12-13, 17.)  Such "weaknesses, implausibilities, inconsistencies, [and]

---

[19] Marc Balter's deposition testimony is also inconsistent with the April 6, 2012 criminal complaint he swore to and signed that led to Plaintiff's arrest, where he said that Defendant Rosenberg checked the orders of champagne glasses before they were loaded onto Plaintiff's truck.  (*See* M. Balter Tr. at 60; *see also* Sofio Decl. Ex. O.)

contradictions," *see Kwan*, 737 F.3d at 846, coupled with the temporal connection between Plaintiff's complaints and his firing, *see Holtz*, 258 F.3d at 79, could allow a reasonable jury to conclude that the theft allegations were pretext for a discriminatory termination, were the jury to credit Plaintiff's version of the story, *see Kirkland*, 760 F.3d at 225-26.

The discriminatory termination claims under Section 1981, the NYSHRL, and the NYCHRL therefore survive.

### 2.      Hostile Work Environment

#### a.      Standard

To state a claim for hostile work environment under Section 1981, Plaintiff must first demonstrate that the complained of conduct:  "(1) is objectively severe or pervasive; (2) creates an environment that the plaintiff herself subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]."  *See Goins v. Bridgeport Hosp.*, 555 F. App'x 70, 71-72 (2d Cir. 2014) (summary order).  In determining whether a work environment is objectively hostile or abusive, courts must review the totality of the circumstances, evaluating such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 547 (2d Cir. 2010) (internal quotation marks and emphasis omitted).  "The Second Circuit has held that isolated instances of harassment ordinarily do not rise to the level of objective hostility; rather, a plaintiff must demonstrate either a single incident that was extraordinarily severe or a series of incidents that were sufficiently continuous and concerted."  *Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 402 (S.D.N.Y. 2012) (internal quotation marks and alterations omitted) (citing *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir.

2000)).  In addition, "[f]or racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (internal quotation marks, citations and alteration omitted).

The NYSHRL claim is analyzed under the same general standard as a Section 1981 claim, *see Rojas*, 660 F.3d at 107 n.10, but conduct need not even rise to the standard of "severe or pervasive" to be actionable under the NYCHRL, *Mihalik*, 715 F.3d at 113.

   **b.** <u>Discussion</u>

Plaintiff testified that Marc Balter mimicked a Spanish accent during most of their interactions, which occurred two or three times a week from the beginning of his employment. William Rivera, one of Plaintiff's co-workers, corroborated this testimony, stating that Marc Balter spoke to Plaintiff in a Spanish accent "all the time."  (Rivera Tr. at 96.)  Plaintiff also testified that Marc Balter told him that he has a "Latin attitude."  (Rosas Tr. at 121-22, 124, 126.) The "Latin attitude" remark is not sufficiently severe to merit much consideration on its own for these purposes, but the mimicking Plaintiff described would, if credited, be sufficiently pervasive—several times weekly throughout the course of his employment, even if also not especially severe—to create an objectively hostile environment.  *See Kouakou*, 920 F. Supp. 2d at 402 (discrimination must be severe *or* pervasive).  In addition, several of his co-workers testified that they perceived Marc Balter to treat white employees more favorably than minority employees.  (Rivera Tr. at 79; Mungo Tr. at 67; Pardo Tr. at 27.)  While those allegations may not be specific enough to support a claim of disparate treatment, a jury could find that these employees' perceptions corroborate Plaintiff's experience of a discriminatory workplace.  *See*

*Rivera v. Rochester Genesee Regional Transp. Auth.*, 743 F.3d 11, 20-22 (2d Cir. 2014) (even relatively thin allegations, unless entirely conclusory or contradictory, are generally left for a jury to decide).

Accordingly, the race-based hostile work environment claims survive.

### B. *Sexual Harassment*[20]

Plaintiff, alleges that Rosenberg sexually harassed him by drawing penises on his paychecks, by attempting to lick his face, by sticking his tongue out at him, and by grabbing his buttocks. He brings these claims under the NYSHRL and the NYCHRL. As with claims of racial discrimination, NYSHRL claims of sexual harassment are analyzed under the Title VII standard. *Pedrosa v. City of New York*, No. 13-CV-1890, 2014 WL 99997, at *6 (S.D.N.Y. Jan. 9, 2014). Under Title VII a "plaintiff must establish that the hostile or abusive treatment was because of his or her sex." *Redd v. N.Y. Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012). To do so, a plaintiff alleging same-sex sexual harassment—as Plaintiff does here—must "provide credible evidence that the harasser was homosexual[,] . . . demonstrate that the harasser was motivated by general hostility to the presence of members of the plaintiff's sex in the workplace[, or] . . . offer direct, comparative evidence about how the alleged harasser treated members of both sexes differently in a mixed-sex workplace." *Tepperwien v. Entergy Nuclear Operations, Inc.*, 606 F. Supp. 2d 427, 438 n.4 (S.D.N.Y. 2009) (internal quotation marks, alterations, and citations omitted); *see Simonton v. Runyon*, 232 F.3d 33, 37 (2d Cir. 2000). Plaintiff fails on all accounts.

First, Plaintiff admits that he does not know whether Rosenberg is homosexual, (Plf.'s

---

[20] By letter dated January 27, 2014, Plaintiff acknowledged that he was not pursuing a claim for wrongful termination on account of his sex. (Sofio Decl. Ex. B.)

56.1 ¶ 41), and there is no other evidence in the record to suggest that Rosenberg is homosexual. Second, there is no evidence regarding Rosenberg's views of men in the workplace. Third, there is insufficient evidence in the record concerning Rosenberg's treatment of female employees. Rosenberg's only testimony regarding female co-workers is that he never massaged their shoulders, never asked them on dates, and never gave them flowers. (Rosenberg Tr. at 9-10.) Meanwhile, all of the drivers were male, including the employees who testified about Rosenberg's conduct. The testimony of those employees was inconclusive at best. Pardo testified that he did not know whether Rosenberg "pursu[ed]" female employees or bought them flowers, (Pardo Tr. at 21), and Mungo could not recall whether Rosenberg massaged the shoulders of female employees, (Mungo Tr. at 21). In light of this evidence, Plaintiff attempts to salvage this claim by stating in an affidavit prepared to oppose this motion that Rosenberg never drew penises on the paychecks of similarly situated female employees, or grabbed or licked such employees. (Rosas Aff. ¶ 11.) These conclusory, self-serving statements—which conspicuously mirror the legal standard rather than providing any substantive information regarding Plaintiff's or anyone else's observations of Rosenberg's specific interactions with female employees—are insufficient to create a triable issue of fact.

"To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Mihalik*, 715 F.3d at 110. Regardless of any differences between the NYSHRL and the NYCHRL, for the same reasons described above, Plaintiff cannot demonstrate that Rosenberg did anything *because of* Plaintiff's sex.

The sexual harassment claim is therefore dismissed.

### C.  *Retaliation*

Plaintiff asserts retaliation claims under the NYSHRL and the NYCHRL.[21]  His

NYSHRL retaliation claim is analyzed using Title VII burden-shifting principles.  *Hicks v.*

*Baines*, 593 F.3d 159, 164 (2d Cir. 2010).  Under that standard, in order to establish a prima facie

case of retaliation, a plaintiff must show:  (1) his engagement in a protected activity; (2)

defendants' awareness of that activity; (3) an adverse employment action; and (4) a causal

connection between the protected activity and the adverse action.  *See id.*  If the plaintiff satisfies

his prima facie case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory

reason for the adverse action, which Plaintiff may defeat by showing that the "adverse action

would not have occurred in the absence of the retaliatory motive," *Kwan*, 737 F.3d at 846.

A plaintiff engages in protected activity "even when the underlying conduct complained

of was not in fact unlawful so long as he can establish that he possessed a good faith, reasonable

belief that the underlying challenged actions of the employer violated [the] law," *see Treglia v.*

*Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (internal quotation marks omitted; alteration

in original), and the complaint is "sufficiently pointed to be reasonably understood as a

complaint of discrimination," *McManamon v. Shinseki*, No. 11-CV-7610, 2013 WL 3466863, at

*11 (S.D.N.Y. July 10, 2013) (internal quotation marks omitted).  "The reasonableness of the

plaintiff's belief is to be assessed in light of the totality of the circumstances." *Galdieri-*

*Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998).

---

[21] Plaintiff's Amended Complaint asserts retaliation claims only under the NYCHRL (third cause of action) and the NYSHRL (seventh cause of action).  Plaintiff attempts, via a footnote in his opposition to this motion, to add a retaliation claim under Section 1981.  But "courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment." *Levion v. Societe Generale*, 822 F. Supp. 2d 390, 399 n.4 (S.D.N.Y. 2011) (internal quotation marks omitted), *aff'd*, 503 F. App'x 62 (2d Cir. 2012) (summary order); *accord Rojo v. Deutsche Bank*, 487 F. App'x 586, 588-89 (2d Cir. 2012) (summary order). I see no reason to deviate from this practice; I will not consider Plaintiff's belated attempt to add a Section 1981 retaliation claim.

"Title VII's anti-discrimination and anti-retaliation provisions are not coterminous; anti-retaliation protection is broader and extends beyond workplace-related or employment-related retaliatory acts and harm." *Baines*, 593 F.3d at 165 (internal quotation marks omitted). Events that do not constitute adverse employment actions for purposes of a discrimination claim may still be considered materially adverse for purposes of a retaliation claim. *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 362-63 (S.D.N.Y. 2006) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)). "To constitute an adverse action for a retaliation claim, the allegedly retaliatory action . . . must be the type of action that would 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 363 (quoting *White*, 548 U.S. at 57).

While the NYCHRL standard is similar in certain respects, under that statute "any non-trivial discriminatory act is actionable," *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011), and "summary judgment is appropriate only if the plaintiff cannot show that retaliation played any part in the employer's decision." *Mihalik*, 715 F.3d at 116.

### 1.     Termination

Plaintiff alleges that his employment was terminated in retaliation for complaining about discrimination. For his prima facie case, he alleges that he complained to Marc Balter about racial discrimination and sexual harassment twice in December 2011.[22] Because Balter was an owner and evidently a manager, this would impute knowledge of the complaint to Balter Sales. *See Kwan*, 737 F.3d at 844 (complaints of discrimination to corporate officer sufficient to impute knowledge to corporation). While Defendants deny that these complaints were made, Plaintiff's

---

[22] In his affidavit submitted in opposition to this motion, Plaintiff also claims to have complained to Marc Balter about racial discrimination in August 2011.

testimony is sufficient to satisfy the first two elements of a prima facie case.  Next, there is no dispute that Plaintiff suffered an adverse employment action when he was fired.  Therefore, for the same reasons discussed with respect to his discriminatory termination claim, Plaintiff has sufficiently raised the possibility of a causal link or connection, given the timing of the complaints and his subsequent termination.  Defendants, in turn, have put forth a legitimate, non-discriminatory reason for firing Plaintiff (i.e., they suspected him of theft).  Plaintiff has adduced sufficient evidence that, if credited by a jury, could lead to the conclusion that discrimination caused the termination of Plaintiff's employment.

Accordingly, these claims survive.

### 2.     Police Report

Plaintiff next claims that Defendants' filing of a police report was retaliatory.  Defendants contend that Plaintiff cannot demonstrate an adverse employment action as to this claim because in the post-employment context any adverse action must impair a plaintiff's job prospects. (Defs.' Mem. 24.)[23]  That appears to have been correct at one time, but the Second Circuit has recently clarified that "[p]rior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment no longer represent the state of the law." *Baines*, 593 F.3d at 165 (citations omitted).  Instead, actions are adverse where "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Id.* (internal quotation marks omitted).  But "[p]etty slights or minor annoyances that often take place at work and that all employees experience do not constitute actionable retaliation."  *Id.* (internal quotation marks omitted).  Under the NYCHRL, the

---

[23] "Defs.' Mem." refers to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment. (Doc. 54.)

standard is even lower, as an adverse action need not even be material, but only nontrivial. *See Regus Mgmt.*, 836 F. Supp. at 173.

Defendants also argue that an employer should not be subjected to retaliation suits for filing police reports. (Defs.' Mem 23 & n.11.) That contention is misplaced here. The out-of-Circuit case Defendants cite as support, *Aviles v. Cornell Forge Co.*, 241 F.3d 589 (7th Cir. 2001), is distinguishable on two grounds. First, that case involved reports that a disgruntled employee was armed, which implicates a safety concern not relevant to the theft allegations against Plaintiff. *See id.* at 593. Second, the court in *Aviles* made clear that while a truthful police report would not be actionable, a *false* police report could be. *See id.* The decision therefore supports Plaintiff's position here because there is a sufficient factual record from which a reasonable jury could conclude that the theft charges were false and pretextual. And it seems clear that false or pretextual criminal allegations could dissuade a reasonable employee from complaining about discrimination.

In addition to the inconsistencies identified between the criminal complaint sworn to by Marc Balter and his subsequent deposition testimony, the timing of the filing of the police report and criminal complaint could be viewed as suspect. Plaintiff's employment was terminated by Marc Balter on January 3, 2012, allegedly for theft. At that time, Plaintiff claims that he told Marc Balter that he was going to retain counsel. (*See* Rosas Aff. ¶ 16.) Marc Balter filed a police report the next day. (Plf.'s 56.1 ¶ 46.) Plaintiff's counsel contacted Balter Sales ten days later, (*id.* ¶ 48), indicating that Defendants were aware that Plaintiff had in fact retained counsel. More than two months later, on April 6, 2012, Marc Balter filed a criminal complaint against Plaintiff, (M. Balter Tr. at 36-37.)

Finally, Defendants argue that Plaintiff's December 2011 complaints were limited to

safety issues; however, there is sufficient evidence in the record from which to conclude that Plaintiff complained about racial discrimination and sexual harassment.  Because the police report was filed only one day after Plaintiff was fired, the analysis regarding a causal connection between the complaints and the adverse action, Defendants' nondiscriminatory reason, and Plaintiff's evidence of pretext is the same as with the claim arising out of Plaintiff's termination.

Accordingly, these claims survive.

### 3.  Counterclaim

Plaintiff finally claims that Defendants' filing a counterclaim in this lawsuit amounts to retaliation.  The filing of counterclaims is only actionable as retaliation where the counterclaims are without any merit.  *See Schanfield v. Sojitz Corp. of Am.,* 663 F.Supp.2d 305, 343 (S.D.N.Y. 2009); *Eng-Hatcher v. Sprint Nextel Corp.,* No. 07-CV-7350, 2008 WL 4865194, at *4 (S.D.N.Y. Oct. 31, 2008).  This is so in part because the employer may not have brought the claims without first being sued, and particularly persuasive where, as here, the counterclaims are compulsory and would be waived if not brought.[24]  *See O'Connor v. Smith & Laquercia, LLP*, No. 08-CV-4559, 2010 WL 3614898, at * 9 (E.D.N.Y. Sept. 9, 2010).

While Plaintiff has adduced enough evidence to persuade a reasonable jury that the theft accusations are pretextual, Defendants have laid ample basis for the assertion of their counterclaim.  Therefore, the counterclaim is not without merit, and as a result Plaintiff's retaliation claims based on it are dismissed.

---

[24] Under Federal Rule of Civil Procedure 13(a), a counterclaim is compulsory if it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  The Second Circuit "has long considered this standard met when there is a logical relationship between the counterclaim and the main claim."  *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (internal quotation marks omitted).  The facts of the two claims need not be identical, but "must be so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Id.*  Here, Plaintiff's termination claims and Defendants' theft claim both necessarily turn on the evidence regarding the stolen champagne glasses and whether Plaintiff was the victim of discrimination and/or retaliation.

## D.  *Interference with Protected Rights*

Plaintiff brings this claim under the NYCHRL, the relevant provision of which states:  "It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section." N.Y.C. Admin. Code § 8-107(19).  "Threats are required" to support such a claim.  *Sletten v. LiquidHub, Inc.*, No. 13-CV-1146, 2014 WL 3388866, at *5 (S.D.N.Y. July 11, 2014).  Because Plaintiff has not presented any evidence of a threat made against him, or even alleged that a threat was made, the claim is dismissed.[25]

## E.  *Aiding and Abetting*

Plaintiff asserts aiding and abetting liability pursuant to section 296(6) of the NYSHRL. "[A]n individual defendant may be held liable under the aiding and abetting provision of the NYSHRL if he actually participates in the conduct giving rise to a discrimination claim."  *Rojas*, 660 F.3d at 107 n.10.  "[T]he individual defendant, who may have personally committed the discrimination, is not held liable for aiding and abetting his own actions, but instead, is deemed liable for aiding and abetting the primary violation by the employer."  *Parra v. City of White Plains*, __ F. Supp. 3d __, 2014 WL 4468089, at *9 (S.D.N.Y. Sept. 4, 2014) (internal quotation marks omitted).  Here, Plaintiff's aiding and abetting claim is an attempt to hold Marc Balter individually liable for the NYSHRL race discrimination claim.  Because Marc Balter was allegedly the primary discriminator, that claim survives.  However, because Plaintiff's sexual

---

[25] Plaintiff's meager attempt to explain his basis for bringing this claim suggests that it is merely duplicative of his retaliation claim under the NYCHRL.  (*See* Plf.'s Mem. 23-24.)  While there is scant authority on this provision of the NYCHRL, I decline to interpret it in the way Plaintiff advocates.

harassment claim must be dismissed, the aiding and abetting claim against Rosenberg must be dismissed.  *See Kellman v. Metro. Transp. Auth.*, 8 F. Supp. 3d 351, 393 (S.D.N.Y. 2014) (under NYSHRL, "aiding and abetting is only a viable theory where an underlying violation has taken place") (internal quotation marks omitted).

### F. *Assault and Battery*

Plaintiff alleges that Rosenberg assaulted and battered him by grabbing his buttocks.  An unwanted touching establishes a claim of battery.  *See Aberbach v. Biomedical Tissue Servs., Ltd.*, 854 N.Y.S.2d 143, 145 (App. Div. 2008).  Plaintiff has demonstrated as much.

Rosenberg argues only that the claim is time-barred.  The statute of limitations for assault and battery is one year.  N.Y. C.P.L.R. § 215(3).  The Complaint was filed in August 2012.  In his deposition, Plaintiff recalled the date of the first of the two or three alleged buttocks-grabs as late 2010 or early 2011, and could not remember the dates of the other two incidents.  In his affidavit in opposition to this Motion, Plaintiff states that the final touching took place in September or October 2011—quite conveniently, within the limitations period.  (*See* Rosas Aff. ¶ 10.)  While Rosenberg is correct that Plaintiff cannot create an issue of fact by submitting an affidavit in opposition to summary judgment that contradicts his earlier deposition testimony, *Raskin v. Wyatt Co.*, 125 F.3d 55, 63 (2d Cir. 1997), discounting Plaintiff's affidavit results in an absence of evidence regarding when the final one or two incidents occurred.  A defendant bears the burden of proof on the affirmative defense of statute of limitations, *Overall v. Estate of Klotz*, 52 F.3d 398, 403 (2d Cir. 1995), and cannot meet that burden by citing an absence of evidence in favor of the plaintiff's position, *La Barbera v. R. Rio Trucking*, No. 03-CV-1508, 2007 WL 2177063, at **4-5 (E.D.N.Y. July 27, 2007); *see Ohlson v. The Cadle Co., Inc.*, No. 04-CV-3418, 2008 WL 4516233, at *8 (E.D.N.Y. Sept. 30, 2008) (denying summary judgment because

"[i]n the absence of [] evidence, the Court cannot determine when the violation took place and ergo when the clock began to run for statute of limitations purposes").

Accordingly, while this claim is dismissed as to any events that took place before August 27, 2011, it survives as to any events thereafter.

### G. *Employer Liability*

Plaintiff seeks to hold Defendant Arnold Balter liable under the NYSHRL and the NYCHRL.  Under the NYSHRL, N.Y. Exec. Law § 296(1), an individual can be liable for a discriminatory practice when he qualifies as an "employer" either by having an ownership interest or the power to make personnel decisions.  *Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 57 (2d Cir. 2012).  However, "an employer cannot be held liable [under the NYSHRL] for an employee's discriminatory act unless the employer became a party to it by encouraging, condoning, or approving it."  *See Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 311 (2004); *accord Parra*, 2014 WL 4468089, at *6.  Arnold Balter admittedly has an ownership interest in Balter Sales, but it is undisputed that he was not involved in the affairs of Balter Sales while Plaintiff was there.  Plaintiff has put forward no evidence that Arnold Balter encouraged, condoned or approved of Marc Balter's actions, let alone that he even knew of them.

On the other hand, under the NYCHRL, an employer can be found individually liable for a discriminatory practice where, among other things, the offending employee "exercised managerial or supervisory responsibility."  N.Y.C. Admin. Code § 8-107(13)(b)(1); *see Zakrzewska v. New School*, 14 N.Y.3d 469, 479 (2010).   Here, the allegedly offending employee was Marc Balter, who had an ownership interest in Balter Sales, is now its Vice President (although he lacked an official title while Plaintiff was employed there), and fired Plaintiff—all of which suggest that he was a manager or supervisor.  Meanwhile, Defendants have provided no

28

evidence from which I could conclude that he was *not* a manager or supervisor.  At the very least, factual questions remain.

The NYSHRL claims against Arnold Balter are dismissed.  The NYCHRL claims against Arnold Balter survive.

### V.     <u>Conclusion</u>

For the foregoing reasons:

1. Defendants' motion for summary judgment on Plaintiff's race discrimination claims under 42 U.S.C. § 1981, the New York State Human Rights Law, and the New York City Human Rights Law is DENIED;

2. Defendants' motion for summary judgment on Plaintiff's sex discrimination claims under the New York State Human Rights Law and the New York City Human Rights Law is GRANTED;

3. Defendants' motion for summary judgment on Plaintiff's retaliation claims under the New York State Human Rights Law and the New York City Human Rights Law is DENIED;

4. Defendants' motion for summary judgment on Plaintiff's interference with protected rights claim under the New York City Human Rights Law is GRANTED;

5. Defendants' motion for summary judgment on Plaintiff's aiding and abetting claims under the NYSHRL and the NYCHRL is GRANTED with respect to Defendant Barry Rosenberg, and it is DENIED with respect to Defendant Marc Balter;

6. Defendants' motion for summary judgment on Plaintiff's assault and battery claim is DENIED;

7. Defendant Arnold Balter's motion for summary judgment is GRANTED with respect

to claims against him under the New York State Human Rights Law, and it is
DENIED with respect to claims against him under the New York City Human Rights
Law.

The Clerk's Office is respectfully directed to close Doc. 53.

The parties shall appear for a conference on April 24, 2015 at 11:15 a.m.  At that
conference the parties should be prepared to discuss a trial date as well as dates for pretrial
submissions.  The parties are directed to Rule 6 of my Individual Rules and Practices for further
guidance on required pretrial submissions.

SO ORDERED.

Dated: March 30, 2015
       New York, New York

Vernon S. Broderick
United States District Judge